STATE, RESPONDENT, *v.* GARDNER, APPELLANT.

(No. 5,945.)

(Submitted June 23, 1926. Decided July 13, 1926.)

[249 Pac. 574.]

*Intoxicating Liquor — Possession of Property Designed for Manufacture of Liquor a Public Offense—Information—Sufficiency—Suppression of Evidence—Searches and Seizures—Constitutional Law — Federal Search-warrant — Evidence — Admissibility.*

Intoxicating Liquors—Possession of Property Designed for Manufacture of Liquor—Statute Defines Crime.

1. *Held,* that section 11070, Revised Codes of 1921, a part of the state Prohibition Law, declaring unlawful the possession of liquor or property designed for the manufacture of liquor intended for use in violation of the Act, and that no property right shall exist in such liquor or property, does not merely apply to proceedings *in rem* against contraband articles, but, taken in connection with section 11073 fixing the penalty, defines a public offense.

Same—Statute—Criminal Intent—Information.

2. The crime defined by section 11070 above is a statutory one enacted under the police power of the state which the legisla-

---

2. Necessity for charging criminal intent, see note in 11 **L. R. A.** 532. See, also, 14 **R. C. L.** 186.

[77 Mont. 8.]

ture may enact without regard to a criminal intent in the wrong-doer; hence an information drafted under it is not rendered defective in the absence of an allegation that defendant committed the act complained of with a specific intent to violate the provisions of the Act.

Same—Property Designed for Manufacture of Liquor—Circumstantial Evidence—Sufficiency.
3. That articles charged to have been unlawfully possessed under section 11070 were "property designed for the manufacture of liquor intended for use" may be shown by either direct or circumstantial evidence, and testimony by an officesr that he found among other things, 500 gallons of "mash" in a high state of fermentation nearly ready to be made into whisky, was sufficient to show a violation of the provisions of the section.

Same—Suppression of Evidence—Admissibility of Evidence Determinable on Motion to Suppress.
4. The right of the state to introduce evidence obtained under an alleged void search-warant must be determined on the hearing on motion to suppress, the burden of establishing irregularity being upon the movant, and evidence introduced at the criminal trial with relation to its illegality is immaterial.

Same—Searches and Seizures—Federal and State Constitutions.
5. The provisions of the federal and state Constitutions relative to unreasonable searches and seizures being but limitations upon the powers of the respective governments, either government is responsible only for the wrongful acts or omissions of its own officers; hence where one charged with the violation of the liquor law complains of illegal acts done by federal enforcement officers under a federal search-warrant over whom the state has no control, his rights are determinable by a reference to section 7, Article III of the state Constitution and not under the provisions of the Fourth Amendment to the United States Constitution.

Same—Search and Seizure by Federal Officers Under Federal Warrant —Evidence—When Admissible in State Court.
6. *Held*, that where federal agents, acting under an alleged void search-warrant issued by a United States commissioner, without the knowledge of any state officer or agent searched defendant's premises and seized articles designed for the manufacture of liquor, the articles seized and the testimony of the federal agents relating to their seizure were properly admitted in evidence, whether the search was legally or illegally conducted.

[1] Intoxicating Liquors, 33 C. J., sec. 196, p. 580, n. 14; sec. 198, p. 584, n. 87; sec. 451, p. 729, n. 42.
[2] Criminal Law, 16 C. J., sec. 42, p. 76, n. 1. Intoxicating Liquors, 33 C. J., sec. 34, p. 505, n. 59; sec. 192, p. 576, n. 54; sec. 196, p. 580, n. 18; sec. 428, p. 715, n. 80; sec. 502, p. 758, n. 87.
[3] Intoxicating Liquors, 33 C. J., sec. 502, p. 758, n. 80.
[4] Criminal Law, 16 C. J., sec. 1110, p. 571, n. 94, 95 New.
[5, 6] Constitutional Law, 12 C. J., sec. 163, p. 744, n. 94; Criminal Law, 16 C. J., sec. 1110, p. 571, n. 95 New. Searches and Seizures, 35 Cyc., p. 1269, n. 41.

4. Admissibility of evidence obtained by unlawful search and seizure, see notes in 24 A. L. R. 1408; 32 A. L. R. 408; 41 A. L. R. 1145. See, also, 8 R. C. L. 196.

*Appeal from District Court, Custer County; S. D. Mc-Kinnon, Judge.*

FRANK GARDNER was convicted of unlawfully possessing property designed for the manufacture of intoxicating liquor, and appeals from the judgment and from an order denying this motion for new trial. Affirmed.

*Mr. C. A. Spaulding, Mr. Geo. W. Farr* and *Mr. Frank Hunter,* for Appellant, submitted a brief; *Mr. Spaulding* argued the cause orally.

The second count of the information does not state an offense. In *State ex rel. King* v. *District Court,* 70 Mont. 191, 224 Pac. 862, it was decided that section 11070, Revised Codes of 1921, is applicable only to *in rem* proceedings and that by enacting it the legislature did not intend to define and make the mere possession of the property there indicated a criminal offense. It seems apparent that section 11070, somewhat like section 11107, is not criminal legislation, is applicable to civil rights only, and only declares against recovery of certain property by the usual civil remedies on account of its contraband nature. Under the provisions of section 11049, which appears to be the criminal statute under which it must be determined whether or not count two states a public offense, it is plain that possession of property which may be designed for manufacturing intoxicating liquors is not specified to be a criminal offense. Regardless of the statute, however, the information is. defective in that it does not specifically state any unlawful intent. The unlawful intent alleged must be certain as to whether it was that of the maker, designer or possessor. (*United States* v. *Carll,* 105 U. S. 611, 26 L. Ed. 1135 [see, also, Rose's U. S. Notes] ; *United States* v. *Horton,* 282 Fed. 731.)

Invalidity of the search-warrant: First: The search-warrant is addressed to and extends greeting to no officer in existence

at the time of its issuance. (See McFadden on Prohibition, sec. 120; Cornelius on Search and Seizure, sec. 347; *Leonard* v. *United States*, 6 Fed. (2d) 353.)

Second: It is void for that whereas it directs the search of the private dwelling, residence, home and house of the defendant, yet neither on the face of the warrant nor in affidavit supporting it is there any allegation of a sale within said dwellinghouse, nor is there any showing that the home was used for purposes excepted by the statute. (Cornelius on Search and Seizure, sec. 127; McFadden on Prohibition, sec. 169, *Staker* v. *United States*, 5 Fed. (2d) 312.),

*Mr. L. A. Foot*, Attorney General, *Mr. S. R. Foot*, Assistant Attorney General, and *Mr. Rudolph Nelstead*, County Attorney of Custer County, for the State, submitted a brief; *Mr. Nelstead* argued the cause orally.

The information is sufficient. Our section 11070 upon which count two is based is identical with the provisions of the Volstead Act. (41 Stats. at Large, 315, Chap. 85, Title II, sec. 25.) This section makes it a crime to have or possess any property designed for the manufacture of liquor intended for unlawful use. (*United States* v. *Puhac*, 268 Fed. 392.)

The competency and admissibility of evidence which has not been secured by state officers or other persons acting under color of authority from the state of Montana cannot be questioned by the defendant from whose possession it has been taken. (*Hughes* v. *State*, 145 Tenn. 544, 20 A. L. R. 639, 238 S. W. 588.)

The federal courts, including the supreme court of the United States, have repeatedly held that the Fourth and Fifth Amendments to the federal Constitution are a restraint *only* upon the federal government and its agents and are not directed to the individual conduct of state officials. (*Robinson* v. *United States*, 292 Fed. 683; *Malacrauis* v. *United States*, 299 Fed. 253; *Landwirth* v. *United States*, 299 Fed. 281; *Vollmer* v. *United States*, 2 Fed. (2d) 551; *United States* v.

*Burnside,* 273 Fed. 603; *Burdeau* v. *McDowell,* 256 U. S. 465, 65 L. Ed. 1048, 41 Sup. Ct. Rep. 574 [see, also, Rose's U. S. Notes Supp.]; *Adams* v. *New York,* 192 U. S. 585, 48 L. Ed. 575, 24 Sup. Ct. Rep. 372 [see, also, Rose's U. S. Notes]; *Lerskov* v. *United States,* 4 Fed. (2d) 540; *Crawford* v. *United States,* 5 Fed. (2d) 672; *Gotterdam* v. *United States,* 5 Fed. (2d) 673; *Schroeder* v. *United States,* 7 Fed. (2d) 60; *Elam* v. *United States,* 7 Fed. (2d) 887; see, also, *Commonwealth* **v.** *Acton,* 165 Mass. 11, 42 N. E. 329; *Commonwealth* v. *Smith,* 166 Mass. 370, 44 N. E. 503; *Gaines* v. *State,* 95 Tex. Cr. 368, 251 S. W. 245; *State* v. *Owens,* 302 Mo. 348, 259 S. W. 100.)

Jurisdiction to issue a search-warrant is not lost by subsequent proof *aliunde* that facts stated positively in the deposition, affidavit or complaint for search-warrant were in reality stated upon information and belief or were false. (*People* v. *Czckay,* 218 Mich. 660, 188 N. W. 506; *People* v. *Christiansen,* 220 Mich. 506, 190 N. W. 236; *State* v. *Shaffer,* 120 Wash. 345, 207 Pac. 229; *Bowen* v. *Commonwealth,* 199 Ky. 400, 251 S. W. 625; *State* v. *English,* 71 Mont. 343, 229 Pac. 727.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On January 22, 1926, the county attorney of Custer county filed in the district court of said county an information containing two counts, the first of which charged the defendant Frank Gardner with the unlawful possession of intoxicating liquor, while the second count charged him with the unlawful possession of "property designed for the manufacture of intoxicating liquor." In the second count it is alleged that the defendant did "wilfully, wrongfully and unlawfully possess the following: Two large vats, one burner, two 30-gallon kegs full of moonshine, 500 gallons of mash, two pressure tanks, three small domes, one hydrometer, one large boiler and other articles * * * designed for the manufacture of liquor intended by him the said Frank Gardner for use in violating the

laws of the State of Montana,'' *etc.* Timely motion for suppression of the evidence, upon the ground that the same was obtained by means of a void search-warrant, was made, heard and overruled.

On April 8, 1926, the defendant was duly brought to trial under the information and his plea of ''not guilty,'' and, on the trial, the articles secured and information obtained by the search under the alleged void warrant, were permitted to go to the jury over the objection of the defendant. At the close of the state's case, and again at the close of the trial, defendant moved for a directed verdict, which motion was overruled. The jury found the defendant ''not guilty'' on count one, and ''guilty'' on count two, and judgment was duly entered on the verdict. Defendant then moved for a new trial, which motion was denied. This appeal is from the judgment and from the order denying him a new trial.

Defendant makes fifteen assignments of error, which, however, collectively raise but three questions: (1) Does count two above state facts sufficient to charge a public offense? (2) Was the evidence sufficient to warrant a conviction under that count? (3) Was the evidence admissible?

1. Counsel for defendant contend that the provisions of sec-
[1] tion 11070, Revised Codes of 1921, apply only to proceedings *in rem* against contraband articles, citing *State ex rel. King* v. *District Court*, 70 Mont. 191, 224 Pac. 862, and that the only provision for criminal prosecution under the Prohibition Act is to be found in section 11049, Revised Codes of 1921.

We find nothing in the *King Case* to justify counsel's contention; all that is there said regarding section 11070 is that, since its enactment, no property rights exist in contraband articles and, therefore, the supreme court will not order their return to a claimant on his application to suppress their use against him in a criminal trial, although it is shown that they were illegally taken from his possession. Section 11070 declares that ''it shall be unlawful to have or possess any liquor

or property designed for the manufacture of liquor intended for use in violating this Act or which has been so used, and no property right shall exist in any such liquor or property.''

This section is now a part of Chapter 29, Revised Codes of 1921, which, with the succeeding Chapter, constitutes our ''Prohibition'' Law; its language is identical with that of the corresponding section of the ''Volstead Act.'' (41 Stats. at Large, 315, Chap. 85, Title II, sec. 25.)

Section 11049, also found in Chapter 29, declares certain acts in violation of the Prohibition Law to be crimes, but it does not contain an enumeration of all acts or omissions which are declared to be unlawful in that Chapter by any means. In addition to section 11070 we find certain acts declared to be ''unlawful'' in sections 11060, 11061, 11062, 11063, 11102 and 11118, while certain other acts are ''prohibited'' by the provisions of sections 11052, 11053, 11064 and, perhaps, other sections found in the Chapter.

Section 11075, as amended by Chapter 116, Laws of 1923, provides special penalties for certain specific acts, and then declares that ''any person who violates any of the provisions of such [prohibition] laws, for which offense a special penalty is not prescribed, shall be fined for the first offense not more than Five Hundred * * * Dollars, * * * .'' This brings the Act under consideration within our Code definition of ''a crime or public offense,'' which is ''an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: * * * 3. Fine, * * * .'' (Sec. 10721.)

While this question has not heretofore been directly presented to this court, we have before this proceeded upon the assumption that a charge based upon section 11070 states a public offense (*State ex rel. King* v. *District Court,* above; *State* v. *Jenkins,* 66 Mont. 359, 213 Pac. 590; *State ex rel. Merrell* v. *District Court,* 72 Mont. 77, 231 Pac. 1107), and properly so. Neither the fact that public offenses of a like

nature are defined in a separate section, nor the fact that the possessor has no property rights in the contraband articles can rob the unlawful possession thereof of its criminal character.

While, under the Prohibition Act, proceedings *in rem* are authorized, it is clear that such proceedings were not intended to supersede criminal prosecution for a violation of any prohibitory statute contained in the Act, for the concluding paragraph of section 11105 reads: "Action under this section and the forfeiture, destruction, or sale of any property thereunder, shall not be a bar to any prosecution under any other provision of the laws of this state relating to intoxicating liquors." (*State ex rel. Prato* v. *District Court,* 55 Mont. 560, 179 Pac. 497.)

Counsel, however, contend that, even if this be so, the information is defective in that it does not charge a specific intent.

The statute does not make any specific intent an ingredient [2] of the crime defined, to-wit: the "possession" of the prohibited articles other than that they are "designed" for the manufacture of liquor *intended* for use in violating the law. The crime defined in section 11070 is purely statutory; it did not exist at common law; it was enacted in the exercise of the police power of the state (sec. 11100), and, "while it is true that our statute declares that 'in every crime there must be a union or joint operation of act and intent,' the statute is but declaratory of the common-law rule * * * and an exception to this rule, in so-called 'statutory crimes' enacted under the police power of the state, is recognized by the great weight of authority." (*State* v. *Smith,* 57 Mont. 563, 190 Pac. 107.)

Section 11070, taken in connection with section 11075 fixing the penalty, defines a complete crime or public offense; count two charges that offense in the language of the statute, and is, therefore, sufficient. (Sec. 11078; *State* v. *Jenkins,* above.)

2. In support of the contention that the evidence is insuffi-

cient, counsel assert that no specific intent was shown, citing only *Nosowitz* v. *United States,* 282 Fed. 575; there the defendant was prosecuted under section 18, Title 2, of the "Volstead Act" which makes it unlawful to manufacture, sell or possess for sale articles "designed or intended for use in the unlawful manufacture of intoxicating liquor," and corresponds to our section 11063. The evidence disclosed that the defendant had manufactured and sold certain "cans" labeled "for storing gas and oils," without any showing that they were intended by the manufacturer for use as stills or parts of stills. The court said: "This statute requires that it be shown that the still is 'intended for use in the unlawful manufacture of intoxicating liquors.' There is no presumption created by the statute which presumes the possession of a vessel that might be used as a still or part of a still to be unlawful. The act of manufacturing must have coupled with it a specific intent to do the wrong denounced in the statute, before the defendant may be said to be guilty. Such intent must be proved as an independent fact, or at least circumstances established from which it would be proper to permit the jury to find such intent." The phrase quoted by the learned judge: "intended for use in the unlawful manufacture of intoxicating liquors," does not appear in the section under which this prosecution was had; but even though we consider the word "designed" as meaning intended by the possessor, and that such intent, as alleged in the information, must be proved (*State ex rel. Prato* v. *District Court,* above), the proof may be either by direct or circumstantial evidence.

The articles introduced in evidence were highly significant [3] of their designed or intended use; among them we find 500 gallons of "mash." The term "property designed for the manufacture of liquor intended for use" in the violation of the Prohibition Act, is broad enough to include "mash." (*United States* v. *Puhac,* 268 Fed. 392.) Of this mash the witness Welliver said: "I discovered some mash in a high state of fermentation; * * * by high state of fermentation I

mean it is nearly ready to run, be worked over and made into whiskey." The mash was clearly "designed" for the manufacture of liquor and for no other purpose, and the "whiskey" to be made therefrom could be used for no other purpose than the violation of the Prohibition Act. The fact that some evidence was introduced to contradict the witness, could raise but a conflict in the evidence which would not justify our interference with the verdict.

The record discloses abundant evidence to justify the verdict and to prove an intent to violate the prohibition contained in the statute.

3. Under the head: "Was the Evidence Admissible?" counsel strenuously contend that the articles produced in court and the testimony concerning them were obtained by means of a void search-warrant, asserting that the warrant was void for the following reasons: (a) It was not addressed to any officer then in existence; (b) as a federal search-warrant it attempted to direct the search of a private dwelling or home without a showing of illegal sales of liquor therein, and (c) that the record shows beyond all doubt that it was obtained by means of deliberate and premeditated perjury.

Timely action was taken for the suppression of the evidence, and, under other circumstances, this contention might have merit. [4] However, we have carefully examined the record made on the motion to suppress and it appears therefrom that the search-warrant was secured by a federal enforcement agent from a United States commissioner; the search was made and the articles seized by two such officers "accompanied and assisted by other persons" not named; it does not appear therefrom that any state officer or agent was present or had knowledge of what was being done. It was only after the evidence was secured and removed from defendant's premises that it was delivered to state officers. The right of the state to introduce the evidence must be determined on the hearing on motion to suppress (*State ex rel. Samlin* v. *District Court*, 59 Mont. 600, 198 Pac. 362; *State* v. *Rice*, 73 Mont. 272, 235 Pac. 716; *State*

v. *Gotta,* 71 Mont. 288, 229 Pac. 405; *State* v. *McDaniels,* 75
Mont. 61, 243 Pac. 810). The burden of establishing irregu-
larity is on the movant (*State ex rel. Brown* v. *District Court,*
72 Mont. 213, 232 Pac. 201; *State ex rel. Hansen* v. *District
Court,* 72 Mont. 245, 233 Pac. 126; *State* v. *Ladue,* 73 Mont.
535, 237 Pac. 495), and evidence introduced at the criminal
trial is immaterial. (*State* v. *English,* 71 Mont. 343, 229 Pac.
727.)

It is therefore apparent that the complaint made concern-
[5, 6] ing the search-warrant is directed solely against the
federal enforcement agents, over whom the state has no con-
trol, while the rights of the defendant are to be determined
only by reference to our constitutional provision (sec. 7, Art.
III), for "consideration of the scope and application of Amend-
ments 4 and 5 of the Constitution of the United States is not
pertinent. It is well settled that the prohibitions embodied in
them are not limitations upon the power of the several states,
but operate exclusively upon the delegated powers to the fed-
eral government." (*State ex rel. Samlin* v. *District Court,*
above.) Had the defendant been prosecuted in the federal
court, the questions presented would have been there threshed
out, but had it there appeared that the evidence was secured by
state officers or strangers, without the knowledge or co-operation
of federal officers or agents and thereafter turned over to the
federal officers, all of the evidence thus secured would have
been admitted in the federal court. Such is the opinion of the
supreme court of the United States, several times repeated.

Thus, in *Burdeau* v. *McDowell,* 256 U. S. 465, 65 L. Ed.
1048, 41 Sup. Ct. Rep. 574 [see, also, Rose's U. S. Notes
Supp.], wherein that court considered the admissibility of
evidence secured illegally, it is said: "The Fourth Amendment
gives protection against unlawful searches and seizures, and, as
shown in the previous cases, its protection applies to govern-
mental action. Its origin and history clearly show that it was
intended as a restraint upon the activity of sovereign au-
thority, and was not intended to be a limitation upon other

than governmental agencies. * * * We assume that the petitioner has an unquestionable right of redress against those who illegally and wrongfully took his private property under the circumstances herein disclosed, but with such remedies we are not now concerned. The exact question to be decided here is: May the government retain the incriminating papers, coming to it in the manner described? * * * We know of no constitutional principle which requires the government to surrender the papers under the circumstances. Had it learned that such incriminating papers, tending to show a violation of federal law, were in the hands of a person other than the accused, it having had no part in wrongfully obtaining them, we know of no reason why a subpoena might not issue for the production of the papers in evidence. Such production would require no unreasonable search or seizure. * * * The papers having come into the possession of the government without a violation of petitioner's rights by government authority, we see no reason why the fact that individuals, unconnected with the government, may have wrongfully taken them, should prevent them from being held for use in prosecuting an offense where the documents are of an incriminating character.''

In *Adams* v. *New York,* 192 U. S. 585, 48 L. Ed. 575, 24 Sup. Ct. Rep. 372 [see, also, Rose's U. S. Notes], on writ of error to the supreme court of New York, it was held that ''evidence which is pertinent to the issue is admissible, although it may have been secured in an irregular or even illegal manner. A trespasser may testify to pertinent facts observed by him, or may put in evidence pertinent articles or papers found by him while trespassing. For the trespass he may be held responsible civilly, and perhaps criminally; but his testimony is not thereby rendered incompetent.''

Where intoxicating liquor was unlawfully seized by state officers having no connection with the federal government, the federal judge of the western district of Wisconsin on appli-

cation to suppress the evidence thus secured, said: ''While it is well settled that competent evidence tending to prove crime is rendered inadmissible where it has been secured by federal officers by unlawful search and seizure in violation of the Fourth Amendment, or where its admission is deemed a violation of the Fifth Amendment, * * * and this rule has recently been applied by the supreme court to contraband articles in the case of *Amos* v. *United States,* 255 U. S. 313, 65 L. Ed. 654, 41 Sup. Ct. Rep. 266 [see, also, Rose's U. S. Notes Supp.], I know of no case where such effect has been given to the trespasses of strangers to the government. That an unlawful seizure by state officers has not such effect was held by the circuit court of appeals of the eighth circuit, both on principle and in conformity to the language of Mr. Justice Day found in the opinions in *Adams* v. *New York,* * * * .''
(*United States* v. *Burnside,* 273 Fed. 603.) (See, also, *Malacrauis* v. *United States,* 299 Fed. 292; *Landwirth* v. *United States,* 299 Fed. 281; *Robinson* v. *United States,* 292 Fed. 683; *Lerskov* v. *United States,* 4 Fed. (2d) 540; *Crawford* v. *United States,* 5 Fed. (2d) 672; *Gatterdam* v. *United States,* 5 Fed. (2d) 673; *Schroeder* v. *United States,* 7 Fed. (2d) 60; *Elam* v. *United States,* 7 Fed. (2d) 887.)

Some contention is made that, even though this may be the rule adopted by the federal courts, it should not be applied in this state because of the radical difference between the Constitution of the United States and our own. There is no fundamental distinction between the guaranty of the Fourth Amendment to the Constitution of the United States, and section 7 of Article III of our Constitution; our section declares that ''the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures,'' *etc.,* while the Fourth Amendment declares that the right of the people to be so secure shall not be violated. The provisions are but limitations upon the powers of the respective governments declaring all searches and seizures unlawful and forbidding the legislature and the Congress to authorize them,

when they do not fall within the limitation. (*State* v. *Fuller,* 34 Mont. 12, 9 Ann. Cas. 648, 3 L. R. A. (n. s.) 762, 85 Pac. 369.) The principle underlying the federal decisions referred to is not grounded upon a lack of power granted under the Constitution; it is based upon the fact that the government, either federal or state, is responsible only for the acts or omissions of those over whom it has authority and control in their official capacity so that their acts become those of the government, and the further fact that, where the government had no part in, nor knowledge of, the commission of the wrongful act by which evidence, papers or effects are wrested from the possession of a citizen and they thereafter come innocently into the hands of government officers, the constitutional provision is not violated by the government or its officers or agents at the time of securing such possession or in securing such possession; such evidence, papers or effects, if admissible in evidence, are not to be excluded merely because strangers to the government at some time prior thereto had violated the defendant's constitutional rights.

While certain of the United States district courts have not been as careful to observe the qualification of the rule, the supreme court, in *Burdeau* v. *McDowell,* above, properly qualified the rule by stating that the government "having no part in wrongfully obtaining * * * " the articles, may use them in evidence. If the officials of the government act in collusion with the trespassers, the government becomes a party to the wrong and should not be permitted to use the evidence thus obtained.

Where this question has been presented to state courts, the rule announced by the supreme court of the United States has been followed. In *State* v. *Owens,* 302 Mo. 348, 259 S. W. 100, Mr. Justice White, after stating that rule, said: "So here it is only unreasonable search by the state officers, acting for the state, which our Constitution provides protection against." In *Gaines* v. *State,* 95 Tex. 368, 251 S. W. 245, decided in 1923, it was said that "the circumstance that a witness in-

troduced to prove a fact or transaction acquired knowledge thereof by unlawful conduct for which the party offering his testimony was in nowise responsible, does not render his testimony in regard thereto inadmissible.''

Again, in *Hughes* v. *State*, 145 Tenn. 544, 20 A. L. R. 639, 238 S. W. 588, the court declared: ''There is no conflict of authority upon the proposition that the constitutional provisions relied upon can only be invoked in this way to protect the citizens against the activities of the government. For example, the provisions of the federal Constitution can only be invoked as against the activities of the agencies of the federal government, and likewise, the rights of the citizens involved in the constitutional provisions referred to are only protected against, the actions of officers of the state government. It is only when persons are acting under color of authority from the government that evidence developed in violations of the law can at all be rejected.'' This declaration is cited with approval in *State ex rel. Sadler* v. *District Court*, 70 Mont. 378, 225 Pac. 1000, although it was there held that the state could not use the evidence obtained. However, the court so held because the record disclosed that, while the persons making the unlawful search were not peace officers, they were employed by the county attorney who thereafter sought to use the evidence thus unlawfully obtained with his connivance and under his authority; and it is there declared that ''the county attorney could not make Whittaker and Larson his agents, and then claim that the illegality was their act, and not the act of the state,'' thus bringing the case within the exception or qualification of the federal rule above discussed, and followed in the above decisions by state courts.

While not directly in point, the following authorities tend to support the position taken: *Commonwealth* v. *Acton*, 165 Mass. 11, 42 N. E. 329; *Commonwealth* v. *Smith*, 166 Mass. 370, 44 N. E. 503; *State* v. *Edwards*, 51 W. Va. 220, 59 L. R. A. 465, 41 S. E. 429; *Shields* v. *State*, 104 Ala. 35, 53 Am. St. Rep. 17, 16 South. 85; *State* v. *Atkinson*, 40 S. C. 363,

42 Am. St. Rep. 877, 18 S. E. 1021; *Williams* v. *State,* 100 Ga. 511, 39 L. R. A. 269, 28 S. E. 624; *Gindrat* v. *People,* 138 Ill. 103, 27 N. E. 1085; *Starchman* v. *State,* 62 Ark. 538, 36 S. W. 940.

As it appeared on the hearing to suppress that the evidence was secured under a federal search-warrant and by federal officers, and it does not appear from the record that state officers or agents had any part in the search or any knowledge thereof until after the property was taken from the possession of the defendant, no error was committed in the admission of the articles received from the federal agents or of their testimony concerning what they discovered in the course of the search, whether legally or illegally conducted.

No substantial error appearing in the record, the judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY and STARK concur.

MR. JUSTICE GALEN, being absent, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied September 25, 1926.