## LUDWICK v. HENDRICKS.

1. Trial—Directed Verdict—Evidence.

It is the duty of the trial court to construe the testimony in a light most favorable to plaintiff when passing upon a defendant's motion for a directed verdict.

2. Negligence—Pedestrian's Duty of Observation Before and While Crossing a Street.

Before crossing a street, a pedestrian must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances.

References for Points in Headnotes

[1] 53 Am Jur, Trial § 349.
[2, 3] 5 Am Jur, Automobiles §§ 211, 214, 293, 446 et seq.
[2, 3] Liability for injury to pedestrian who suddenly darts or steps into path of automobile. 65 ALR 192; 113 ALR 528.
Duty and liability to person struck by automobile while crossing street at unusual place or diagonally. 14 ALR 1176; 67 ALR 313.
Right-of-way at street or highway intersections. 21 ALR 974; 37 ALR 493; 47 ALR 595.
Duty of pedestrian crossing street or highway as regards looking for automobiles. 79 ALR 1073.
[4] 3 Am Jur, Appeal and Error § 820.

3. AUTOMOBILES—PEDESTRIANS—CROSSING STREET—NIGHTTIME—OBSERVATION—CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW.

> Southbound pedestrian who was crossing street 40.7 feet wide about midnight on a rainy, freezing night in mid-November when visibility was poor and who either saw defendants' car but failed to make proper observations while crossing street or made proper observations but was heedless of obvious danger until too late to escape injury was guilty of contributory negligence as a matter of law.

4. APPEAL AND ERROR — QUESTIONS REVIEWABLE — REASONS AND GROUNDS OF APPEAL.

> Applicability of subsequent negligence doctrine will not be considered by the Supreme Court on appeal, where it was not presented to the trial court nor set forth in the reasons and grounds of appeal.

Appeal from St. Joseph; Hatch (Blaine W.), J., presiding. Submitted November 20, 1952. (Docket No. 104, Calendar No. 45,702.) Decided January 5, 1953.

Case by John Ludwick against Mary Hendricks and others to recover for damages suffered when he was struck by defendants' automobile. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Victor E. Bucknell,* for plaintiff.

*Raymond H. Dresser* and *Howard J. Bush,* for defendants.

BUTZEL, J. At or about 2:30 a.m. on November 14, 1949, while walking across US–112, also known as Chicago street, in the city of Sturgis, Michigan, John Ludwick, plaintiff, was struck and severely injured by an automobile owned by Ernest Hendricks and driven by Mary Hendricks, his wife, defendants herein. Plaintiff brought this action to recover for the injuries he received. On defendants' motion at

the conclusion of plaintiff's case, the judge directed a verdict for defendants on the ground that plaintiff was guilty of contributory negligence as a matter of law. Plaintiff appeals, claiming that he was not guilty of contributory negligence as a matter of law, but that even if he were, he still would be entitled to recover under the doctrine of subsequent negligence.

Chicago street runs in an easterly-westerly direction, is approximately 40.7 feet wide and has 4 traffic lanes. Jacobs street runs into Chicago street from the north, but does not cross it. On Chicago street and approximately 210 feet west of Jacobs street, as paced off by plaintiff's son, there is the driveway of the American Legion Home of Sturgis. At some point between Jacobs street and the American Legion Home, Chicago street is intersected by Grove street. There is a gasoline station at the corner of Grove and Chicago streets, but the record fails to disclose at which corner it is located. It was raining and freezing on the night of the accident and visibility was poor.

Mary Hendricks, called as a witness under the statute for cross-examination,* testified that she had gone to the legion home at about 10:30 on the evening before the accident to serve the midnight lunch at some festivities which were going on there. She further testified that she had had 1 drink between 10:30 and 11 p.m., but none thereafter. She stated that she left the legion home about 2:30 a.m. with 2 other women. She also testified that she turned the car's lights on before she left the curb, started up, shifted the gears and was proceeding east on Chicago street at about 20 miles per hour in the right-hand lane when her car struck plaintiff. She did not see plaintiff until the instant before the impact and does not know where he came from. She did apply the brakes

---

* CL 1948, § 617.66 (Stat Ann § 27.915).—R EPORTER.

immediately upon seeing him. She further testified that she called upon plaintiff at the hospital the following day, and that he then said that he had gone to a tavern and the hotel on the afternoon preceding the accident to drink, but that he did not say how many beers he had had. She also stated that there were cars parked on either side of the street and that there was traffic coming from the other direction, and that she had passed a car going in the opposite direction just before the accident occurred.

Plaintiff testified that he had left his home about 2 o'clock in the afternoon, went to the postoffice, stopped in the B & W (a tavern) and bought a cigar and was "on the street watching the doings in Sturgis." Along about midnight he met one Charley Harder at the hotel, where they each had 1 glass of beer. He said that he then went home, stopping at a lunch room on the way to purchase a cigar. He walked west along the north side of Chicago street and crossed Jacobs street before turning to cross to the south side of Chicago street. He testified that he waited at the curb until the traffic had "cleaned off" before proceeding to cross. Plaintiff said that when he reached the middle line he looked and did not see anything. Then he testified that he saw defendants' car on the west side of the filling station. He said that there were no lights on the car, but he could see it by the illumination furnished by the lights at the filling station; that he was able to see the street for about one-eighth of a mile westward by the street lights and the lights at the gas station. He estimated that the car was about 300 feet away, quite close to the driveway from the legion home, at the time he first saw it. Later he said that the gasoline station may have been 100 to 125 feet away. Plaintiff testified that he started to cross the south half of the street, misjudged the speed that the car was going and that when it got pretty close he tried

to dodge it but was too slow. When asked whether he had continued to watch the car as he proceeded, plaintiff answered:

"I did when I seen it was too close and I could not get out of the way. I didn't hear any horn blow."

From this the only inference to be drawn is that plaintiff did not observe the car's progress from the time he first saw it until just before it struck him. However, after the noon recess plaintiff was recalled to testify as to the extent of his injuries, and at that time he testified as follows on cross-examination:

"I stopped in the center of the street, and when I got hit, it might have been 3 or 4 feet from the curb. I had gotten nearly across the street. This car was coming up the middle lane, over on its own side of the road. It was raining, I kept glancing both ways and kept on walking. After I started from the middle of the street I didn't stop and kept looking both ways, and got within 3 or 4 feet from across, where I got knocked down. This car was pretty close and I tried to jump, I could not make it and so got hit. It was closer than a couple of car lengths from me. I might have had my face the other way, looking east, and the car got a little closer, when it was less than a car length away, and I tried to jump out of the way, and was too late."

Plaintiff placed the time of the accident at around midnight. He also testified that there were no other vehicles in motion at the time of the accident, and that there were no parked cars on the west side of Chicago. Since, according to the record, Chicago runs east and west, it is impossible to tell which side of the street plaintiff had reference to.

In passing upon defendants' right to have a verdict directed in their favor, the evidence must be construed in the light most favorable to the plaintiff.

*Weber* v. *Bergwall,* 328 Mich 421; *King* v. *Nicholson Transit Co.,* 329 Mich 586.

Plaintiff's duty of care as a pedestrian has been clearly set forth in *Malone* v. *Vining,* 313 Mich 315, and subsequent cases as follows:

"Under present-day traffic conditions a pedestrian, before crossing a street or highway, must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street or highway, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances."

In *Cioffari* v. *Blanchard,* 330 Mich 518, plaintiff pedestrian was held guilty of contributory negligence as a matter of law where after seeing approaching traffic he proceeded to cross in front of it and failed to continue to watch that traffic while crossing. The Court there said:

"In many cases we have held that one is not free from contributory negligence who observes an automobile coming on the intersecting street and then proceeds to cross without giving further heed to the oncoming vehicle until the instant before or at the time of collision." *Sonfilian* v. *Wiedman,* 291 Mich 697.

Having discovered the oncoming vehicle, it is the pedestrian's duty to keep watch of its progress and to exercise reasonable care and caution to avoid being struck by it. The accident in the instant case took place on a rainy, freezing night. Visibility conditions were poor and according to plaintiff's testimony he saw defendants' car approaching without headlights. It, therefore, also became his duty to proceed with caution. Plaintiff nevertheless walked out in front of the approaching vehicle and failed to discover his peril until the car was within a couple

of car lengths of him. Such was not the conduct of a reasonably prudent man under the circumstances.

Under the testimony presented the only reasonable conclusions that can be reached are:   (1) That plaintiff saw the car, but failed to make proper observations while crossing, or (2) that he made proper observations while crossing but was heedless of obvious danger until it was too late to escape injury. Under either conclusion, viewing the testimony in the light most favorable to plaintiff, he was guilty of contributory negligence as a matter of law. See, also, *Ayers* v. *Andary,* 301 Mich 418; *Schillinger* v. *Wyman,* 331 Mich 160.

The question of the applicability of the subsequent negligence doctrine was not presented to the trial court nor was it set forth in the reasons and grounds of appeal. A question which has not been included in the reasons and grounds of appeal will not be considered on appeal. *Dodge* v. *Blood,* 299 Mich 364 (138 ALR 322); *DesRoches* v. *McCrary,* 315 Mich 611.

Judgment for defendants affirmed, with costs.

DETHMERS, C. J., and ADAMS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.