PEOPLE *v.* ROBINSON.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—VALIDITY OF POLICING CONTRACTS.

Questions concerning the validity of policing contracts between municipalities and private corporations engaged in private detective and police detection work, or the lawful powers of employees of the latter to arrest or stop motorists on the highways for traffic violations, are not before Supreme Court for determination, where record discloses neither the existence nor provisions of such a contract and appellant raised but single claim of error that his conviction of speeding was based on evidence which should have been suppressed because obtained by illegal means (Court Rule No 66, § 3 [1945]).

2. EVIDENCE—JUDICIAL NOTICE—SHERIFFS.

The Supreme Court takes judicial notice as to who was sheriff of county at time defendant was arrested therein for speeding.

3. ARREST—DEPUTY SHERIFF—COMMISSION OF MISDEMEANOR IN OFFICER'S PRESENCE.

A deputy sheriff has authority to arrest or stop a person for a misdemeanor committed in the officer's presence (CL 1948, § 764.15).

4. CRIMINAL LAW—AUTHORITY TO STOP ON HIGHWAY—BURDEN OF PROOF AS TO ILLEGALITY OF EVIDENCE.

The burden does not rest upon the people to establish that person who stopped defendant for speeding on the public highway had authority to do so, but the burden is upon the

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 246.
[2] 20 Am Jur, Evidence § 79.
[3] 4 Am Jur, Arrest §§ 26, 27.
[4] 20 Am Jur, Evidence § 396.
[5, 6] 20 Am Jur, Evidence § 396.
[5, 6] Admissibility of evidence obtained by unlawful search and seizure. 24 ALR 1408; 32 ALR 408; 41 ALR 1145; 52 ALR 477; 88 ALR 348; 134 ALR 819; 150 ALR 566.

accused, who claimed the evidence was obtained illegally, to establish the lack of such authority and consequent illegality of the means by which the evidence was obtained.

5. SEARCHES AND SEIZURES—MOTION TO SUPPRESS ILLEGALLY-OBTAINED EVIDENCE.

A defendant's objection to evidence on the ground that it was illegally obtained comes too late when made for the first time at the trial but should be made in advance of trial by motion to suppress.

6. CRIMINAL LAW—MOTION TO SUPPRESS ILLEGALLY-OBTAINED EVIDENCE.

Evidence of defendant's arrest for speeding on the public highway must be held to have been lawfully obtained and properly received under record not showing that defendant had made a motion to suppress same in advance of trial.

SMITH, J., dissenting.

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted June 16, 1955. (Docket No. 66, Calendar No. 46,229.) Decided December 28, 1955.

Thomas N. Robinson, Jr., was convicted of speeding after receiving traffic ticket from private policing agency. Affirmed.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Jacob A. Dalm, Jr.,* Prosecuting Attorney, and *J. Douglas Cook,* Assistant Prosecuting Attorney, for plaintiff.

*Victor E. Bucknell,* for defendant.

SMITH, J. (*dissenting*). This is a case in which a portion of the police powers of a municipality have been sold to a private corporation, which, for its gain, thereupon undertakes the enforcement thereof upon the public highways of the State. The defendant makes bold to assert that this is unconstitutional.

There is no dispute about the facts. The defendant, on March 13, 1953, was driving his car in an easterly direction on highway US-12 in Comstock township, Kalamazoo county. He heard a siren behind him and shortly thereafter he was stopped by a police-type car containing 2 men. The defendant did not resist or evade. As one of the 2 men testified: "I blew the siren before I stopped Mr. Robinson, but did not crowd him to the curb or flash the red light." The car carrying the 2 occupants was a 2-door, cream-colored police-type cruiser. It bore the lettering "Police" on both sides of the hood. It carried a combination siren and searchlight. A "shield" appeared on each door of the car.

Out of this car stepped one Richard W. Allen. He asked to see defendant's license to drive and operate his motor vehicle. After it was handed him, in response to such request, Allen went back to "Sergeant" Eberly, who made out what is described in the record as "a violation ticket." The dress assumed by the so-called Sergeant was in keeping with the assumed status of his vehicle. It was a uniform. On the left front was a "badge." On his right sleeve were the words "Police Traffic" and the insignia of a sergeant. Also on his right sleeve were the words "Charles Services, Inc."

Their whole get-up was a simulation of the accoutrements of our regular police officials. The truth of the matter is that these men were the employees of a private profit corporation, hired by it and paid exclusively by it. Their corporate employer had employed them to serve as "police officers." "I live in Kalamazoo," testified one. "I am employed by Charles Services as a police officer, performing duties on traffic and night patrol." The car in which they were "patrolling" the public highway was likewise a carefully contrived simulation of a public vehicle, including in its details, a siren permitted

under our statutes (CLS 1954, § 257.706 [Stat Ann 1952 Rev § 9.2406]) only to authorized emergency vehicles. This car, in truth, was not a public vehicle but was the private property of the corporation, or its president.

Having thus identified the offending citizen, and having given him a "violation ticket," the sergeant, now as "Al Eberly," minus the official title, signed a complaint upon which a warrant was issued out of the municipal justice court of Kalamazoo. This warrant was served and returned by the Michigan State police, following which trial was had and conviction for speeding obtained.

Charles Services, Inc., is a private corporation, organized for profit, and known as a private police investigating agency. The details of its contract with the municipality are not set forth in the record. We do not know whether the corporation purchased the right to patrol the highways, much as a concession is purchased at a carnival, or whether the municipality hired out its law-enforcement functions for a fee, fixed, contingent or otherwise. In the view we take of the case the method employed does not control our decision. It is clear from the record, however, that the corporate employees have patrolled the highways for some 3-1/2 years and we must assume, from this course of conduct, and its recognition by the public officials of the area, that, either by its terms or its construction, the contract permitted Charles Services, Inc., to perform the functions herein described.

We will not explore in detail all aspects of the prosecutor's argument. He seeks to justify the conviction primarily upon the theory that an "irregular arrest (is) no cause for discharge where followed by (a) regular complaint and warrant" (*People* v. *Miller*, 235 Mich 340 [syllabus 1]; *In re Little*, 129 Mich 454 [57 LRA 295]); that here, following

the highway incident above described, there was a regular complaint and warrant, and that the court therefore had jurisdiction and the conviction was valid. It is added that there was no timely motion to suppress evidence allegedly illegally obtained, *i. e.,* the information obtained from the driver's license of the identity of. the offending motorist.

The difficulty with the prosecutor's syllogism is that it overlooks the basic defect in the series of incidents described. What we actually have here goes far deeper than matters of evidence, or whether the citizen was, or was not, in custody (*i. e.,* arrested) as he stopped his journey and produced his identification papers in respectful deference to the show and sound of the majesty of the law. It involves the private exercise of a portion of the police power of the State, an idea which was characterized by Mr. Justice CAMPBELL for this Court almost a hundred years ago as "inconsistent with any.idea of government whatever." *Ames* v. *The Port Huron Log Driving & Booming Co.,* 11 Mich 139, 148 (83 Am Dec 731).

The police power is an inherent attribute of sovereignty. It should require no citation of authority that it can neither be abdicated nor bargained away. It is not alienable even by express grant. The cases are collected in 2 McQuillin, Municipal Corporations (3d ed), § 10.38 *et seq.* See, also, *Petz* v. *City of Detroit,* 95 Mich 169, 180. Particularly is this true with respect to those inalienable rights of the citizen having to do with his personal freedom, his freedom from arbitrary stoppage, detention, or arrest, from unreasonable search and seizure. Not only are the constitutional and statutory safeguards, as interpreted by this Court, explicit as to manner of arrest, whether with or without warrant, and, if the latter, under what circumstances, but the qualifications of the arresting officer equally so. He is a re-

sponsible, upright and discreet citizen. He is elected or appointed. He takes oath. He gives bond. The basic concept is one of personal responsibility traceable directly to the authority of the people. What have we here? We know nothing of the qualifications imposed by the directors of the private corporation in their selection of "officers." How do its bylaws square with our great constitutional principles? What are its doctrines as to "arrest"? Is the corporate official who hires and fires extended any greater privilege, on the highway, by the servants of his choice, than the humblest stranger on the road? How, indeed, does the corporation take the required oath before it embarks upon its patrolling of the highways?

There is an intimation in the record that, in addition to being corporate employees, the employees were also deputy sheriffs. We say "intimation" advisedly. Their authority was not shown affirmatively as part of the people's case despite prompt challenge of their capacity and authority, although on cross-examination the claim was made that they were "deputized." By what officer or authority we are not informed. The record is silent, likewise, as to any claim of such status through the use of insignia, or by way of oral notification. The sleeve designation was not that of deputy sheriff but of Charles Services, Inc., combined, as noted, with the indicia of a "Sergeant," a rank we do not find defined for deputy sheriffs in the statutes of this State. Their status seems to be defined with accuracy by their employer:

"The Charles Services, Inc., is a private corporation known as a profit organization and I am the president. Witnesses Eberly and Allen were employees of mine and are engaged in police-type work and subject to call at any time. Charles Services, Inc., also holds a license as a private detective agen-

cy and does private police detection work along with detective work. I am the supervisor and immediate superior of Eberly and Allen who have testified and they are on a salary basis which is paid by Charles Services, Inc., which, so far as I know, is their only compensation."

If these "officers" were in fact deputies, properly authorized public officials, the fact that they were privately employed and paid by a commercial corporation for the patrolling of public highways is indefensible. And if they were not properly authorized public officials, that they should be patrolling our highways and regulating the conduct of our citizens is equally indefensible.

The activities of the corporation did not end with the citizen's halt and inquisition on the highway. The record invites our attention to exhibit A of the application for leave to appeal, a letter addressed by the president of the corporation to the defendant. It follows in its entirety:

"Charles D. Spencer          Charles A. Plummer

CHARLES SERVICES, Inc.

Licensed and Bonded Detective Agency
218 South Westnedge Avenue, Kalamozoo, Michigan

Telephone 5–0320
April 2, 1955

"Mr. Thomas N. Robinson
457 Cedar Street
Benton Harbor, Michigan

"*Dear Mr. Robinson*:          Re: Case No. S–35062
Traffic Summons No. 1053
Charles Services, Inc.

"On March 19th our officers were in court awaiting your appearance and, as we have now learned that

you were in the city and contacted our prosecuting attorney, we assume that you were not familiar with the procedure you were expected to follow and therefore did not go to the municipal justice court room, which is located on the second floor at police headquarters. The prosecutor turned over to me your copy of the traffic summons and we realize that you did make an effort to appear.

"Your appearance has now been scheduled for Thursday morning, April 9th, at 10 A. M. However, I am assuming that you desire to enter a plea of not guilty and request a trial. In this event, I would suggest that you contact the municipal court prior to the time of your scheduled appearance, and I believe the court will allow you to enter your plea and set a date for trial of the case. If you desire a trial by jury, you should advise the court, as it may make some difference in the date or time set. Following this procedure will save you another trip to Kalamazoo.

"Trusting you will give this matter your prompt attention, we are

"Very truly yours,
"CHARLES SERVICES, Inc.
"By/S/ CHARLES D. SPENCER
"Charles D. Spencer
"President

"CDS/W
"Commercial Police. Civil and Criminal Investigations. Uniformed Guards."

From the contents of the above the corporate function becomes increasingly clear. It has assumed an active role in the enforcement of the law. Having left the highway, it now reaches into the trial stage. Thus it is that "our officers" have been waiting for you. The citizen, he is told, should "advise" the court if his "desire" is for trial by jury. This is apparently what is referred to in legal quarters, as distinguished from corporate, as the "demand for

jury trial," a phrase rich in history, employing, it is noted, the word "demand," a blunt, arrogant word, full of pride, smelling of the bill of rights, and eschewing the delicacy of request or advice.

The source of all of this information, a newcomer to our judicial processes, challenges our professional curiosity. This corporation, a creature of charter and contract, is far from the orthodox lifeless entity, without mind, soul or body. This one has acquired a legal education. It is advising citizens in trouble, real trouble, facing possible incarceration, as to procedures to follow. We view the corporate prodigy with incredulity and without warmth.

Our Court has in past years traced the tortuous and often bloody path by which our people finally attained their personal freedoms, their right to live without unwarranted interference. This is not the occasion to retrace the familiar path. It is, however, the occasion to state in the clearest possible terms that the carefully circumscribed power to transgress upon this liberty, so dearly bought, cannot be hawked to a private profit corporation. It cannot, very simply, because it cannot be the subject of bargain and sale. Liberty and freedom partake more of the nature of articles of faith than articles of commerce.

If the police function with respect to traffic enforcement can be put on the public auction block, or its sale or purchase negotiated privately, so, it would follow, might any or all other police functions. The possibilities, nay, probabilities of manifold abuse, of untold aggrandizement, well justify Mr. Justice CAMPBELL's stricture. Such action is, indeed, inconsistent with any idea of government whatever. It is not, in fact, government as we know it. We will not, we need not, elaborate.

We cannot agree with Mr. Justice DETHMERS that this record does not disclose the existence of a con-

tract. The presence of these men, dressed as described, "patrolling the highway" in their "two-door, cream-colored police cruiser-type vehicle with a shield on each door and the word 'Police' across the hood" could only have occurred from an agreement of the municipal authorities with the corporation. We care not for the terms or the writing. The basic problem is not one of a meeting of the minds, or whether a properly-deputized sheriff can arrest a citizen, or even a technical point of evidence (the "suppression" of the knowledge gained by Sergeant Eberly). All of this is old straw, well threshed. Here the basic issue is one of government: May a portion of the police power be sold to a private corporation to be thereafter exercised by its employees for its profit? We say the sale cannot be made. And if the sale is wrong, as ruled by Mr. Justice CAMP-BELL, it cannot be righted merely by deputizing the corporate employees. The corporate deputy is no stranger to the law. His face has often appeared in the courts. See Hearings before a Subcommittee of the Committee on Education and Labor, United States Senate (1936–1939), pursuant to Senate Resolution 266, 74th Congress, 2d Sess. If he has any place in our scheme of government it is behind the company fence, not on the public highways.

In short, the contract of Charles Services, Inc., with the employing municipality was against public policy, illegal and void. The actions taken under the contract and pursuant thereto were an integral part of a wholly unconstitutional scheme of law enforcement. This being the case we will not decide the isolated questions of arrest and evidence presented, since they come to us only in a context of proceedings resting upon a foundation riddled with invalidity.

The conviction should be reversed. Costs to appellant.

Dethmers, J. I do not concur in reversal. Questions concerning the validity of policing contracts between municipalities and private corporations engaged in private detective and police detection work, or the lawful powers of employees of the latter to arrest or stop motorists on highways for traffic violations, interesting though they may be, are not before us for determination in this case, in which the record discloses neither the existence nor provisions of such a contract. Here the question is whether prejudicial error occurred on trial, which entitles defendant to reversal of his conviction of speeding. Defendant's statement of reason and ground for appeal raises a single claim of error (no other will be considered—Michigan Court Rule No 66, § 3 [1945]; *Ludwick* v. *Hendricks,* 335 Mich 633), namely, that his conviction was based on evidence which should have been suppressed because obtained by illegal means. Defendant predicates this claim on the contention that the evidence, received at trial over his objection, establishing his identity as driver of the speeding automobile, was obtained as the result of his having been stopped unlawfully on the highway by an employee of a private detective agency not authorized by law to arrest or stop persons for the commission of offenses other than felonies, except when summoned to assist a peace officer. CL 1948, § 764.16 (Stat Ann 1954 Rev § 28.875).

The private detective agency employee who stopped defendant, asked for and examined his operator's license, made out and gave him a violation ticket, and identified him on trial as the driver of the speeding automobile, testified that he was deputized, that he was a special deputy sheriff, and that one of his immediate superiors from whom he took orders was Mr. Buder, the sheriff, this Court taking judicial notice of the fact that at that time Otto K. Buder was the sheriff of Kalamazoo county where

the speeding offense occurred. *People* v. *Johr,* 22 Mich 461; and *Union School District of City of Saginaw* v. *Council of the City of Saginaw,* 232 Mich 639. Authority of a deputy sheriff of the county to arrest or stop defendant for a misdemeanor committed in the officer's presence cannot be questioned. CL 1948, § 764.15 (Stat Ann 1954 Rev § 28.874). The burden did not rest on the people to prove the authority of the person stopping defendant to do so, but, on the contrary, defendant, being the party asserting that the evidence was obtained illegally, had the burden of establishing the lack of such authority and the consequent illegality of the means by which the evidence was obtained. *State* v. *Gardner,* 77 Mont 8 (249 P 574, 52 ALR 454). This burden he did not sustain. The necessity for his doing so points up one of the reasons for our oft-repeated holding that a defendant's objection to evidence on such ground, made for the first time, as here, when offered at trial, comes too late, but ought to have been made in advance of trial by motion to suppress. *People* v. *Heibel,* 305 Mich 710, and cases therein cited. It follows that the evidence complained of must, under the record in this case, be held to have been lawfully obtained and properly received. That disposes of the only claim of error properly before us on appeal.

Affirmed.

Carr, C. J., and Butzel, Sharpe, Reid, and Kelly, JJ., concurred with Dethmers, J.

Boyles, J. (*concurring*). This is another example of the unsatisfactory manner in which cases are sometimes brought to this Court for review. It is true, as Mr. Justice Dethmers states, that in the record appellant's statement of reason and ground for appeal raises only 1 ground for reversal, that the conviction was "based entirely on testimony which

should have been suppressed at the trial * * * because of illegal means used in obtaining the facts of the trial in the complaint." Also, we have frequently held that no other question would be considered. But appellant's brief brings to us under the heading "Statement of questions involved" the 3 questions which are discussed by Mr. Justice SMITH. And in appellant's "Statement of facts" in his brief, I find the facts on which those questions are predicated. The people's brief, for the appellee, merely points out briefly 2 "insufficiencies" in appellant's statement of facts, namely, that the 2 employees of Charles Services, Inc., were special deputy sheriffs, and that no arrest had been made by them, merely that a traffic violation ticket had been given the defendant. Appellee's counterstatement of facts concludes with equal brevity that "with the exception of the insufficiencies pointed out above, appellee accepts the statement of facts in the brief of appellant." While these "facts" should have been shown in the record, they seem to have been agreed upon.

I cannot ignore the provisions in our Michigan Court Rule No 67 (1945) which require the appellant to begin his brief, on page 1, with a concise "statement of questions involved" in the appeal, and follow it with a "statement of facts." Rule No 67 further specifically requires that the appellant's statement of questions involved be used as "topical subheadings" throughout the argument in appellant's brief. And the rule expressly states that ordinarily no point will be considered which is not set forth or necessarily suggested by that statement of questions involved.

Consequently, I feel that the record and briefs on this appeal, unsatisfactory as they are, justify the consideration given by Mr. Justice SMITH to appellant's statement of questions involved in his brief,

under Rule No 67. I agree with the conclusions reached by Mr. Justice SMITH in his consideration of the statement of questions involved as found in appellant's brief, but do not agree that we should reverse on that ground.

I am bound by the uncontroverted statement in the testimony of 1 of the employees of Charles Services, Inc., who stopped the defendant on the highway, "I am *a special deputy sheriff*," and that "I am paid by the week and my immediate superior is Mr. Spencer *and Mr. Buder, the sheriff,* from whom we get a lot of orders."

I agree with Mr. Justice DETHMERS that inasmuch as this "employee" was a deputy sheriff, the conviction should be affirmed, based on that ground. And finally, the record does show that the defendant violated the speed law.