PEOPLE v VAN TUBBERGEN

Docket No. 226082. Submitted September 11, 2001, at Grand Rapids. Decided January 22, 2002, at 9:05 A.M.

David L. Van Tubbergen was convicted of operating a vehicle while under the influence of intoxicating liquor following a bench trial in the 58th District Court, Hannes Meyers, Jr., J. Before trial, the defendant had brought, and the court had denied, a motion to dismiss the charge on the basis that his arrest was unlawful because it had been made on the public streets of the city of Holland by two members of the public safety department of Hope College, a private college affiliated with the Reformed Church of America. The defendant appealed to the Ottawa Circuit Court, again raising statutory and constitutional challenges to the authority of the Ottawa County Sheriff to appoint public safety officers employed by a private college as deputy sheriffs with the authority to make arrests for offenses committed on a public street. The circuit court, Edward R. Post, J., affirmed the defendant's conviction, holding that the sheriff had statutory authority to appoint privately employed public safety officers as deputy sheriffs with authority to make arrests on public streets and that the deputizing of persons employed by private religious institutions did not impermissibly infringe the constitutional principles mandating separation of church and state. The defendant appealed by leave granted.

The Court of Appeals held:

1. MCL 51.70 authorizes each sheriff to appoint one or more deputy sheriffs, who serve at the sheriff's pleasure, and to also appoint special deputies to do particular acts, who also serve at the sheriff's pleasure. The defendant does not dispute that a sheriff may appoint public safety officers employed by a private religious college as deputy sheriffs with the limited power to protect the special interests of the college on college property, but argues that the Ottawa County Sheriff had no authority to appoint the employees of Hope College as deputy sheriffs with the power to make arrests for offenses committed on a public street outside the boundaries of the college property.

2. Although there is nothing in the language of MCL 51.70 that expressly requires that the persons appointed as deputy sheriffs be public employees or precludes privately employed persons from

being appointed as deputy sheriffs, the defendant argues that MCL 45.401 and MCL 45.405 limit the scope of the sheriff's power to appoint deputies by requiring that persons so appointed be paid by a salary from the county's general fund as authorized by the county board of commissioners or county board of supervisors. Neither MCL 45.401 nor MCL 45.405 limit the sheriff's authority to appoint deputies to the appointment of persons who are compensated by the county, but rather both address the question of the control of the county's budget and limit any compensation that may be received from the county by any deputies that are appointed by the sheriff to those amounts that are approved by the board of commissioners or board of supervisors.

3. Neither the fact that sheriffs are statutorily authorized to appoint deputies to protect private interests nor the fact that the Legislature has authorized four-year public colleges to form police departments, authorized railroad police to enforce general law while on duty, and has given police powers to private security guards while on their employer's premises acts to preclude a sheriff from appointing private individuals who are employees of a religiously affiliated college as deputy sheriffs with the power to arrest persons for violations of state laws on public streets.

4. Because it is the individuals who are appointed, and because those individuals are bound by the confines of the law and serve at the sheriff's pleasure, the appointment of privately employed individuals as deputy sheriffs does not constitute an improper delegation of the sheriff's law enforcement powers to the private body that employs the individuals that have been appointed as deputy sheriffs.

5. The defendant argued that the sheriff's use of employees of a religiously affiliated college as deputies has the primary effect of improperly advancing religion because the employment relationship could greatly affect the deputies' actions, resulting in excessive entanglement between the sheriff's office and the religious organization and thus violating the Establishment Clauses of the United States and Michigan Constitutions. In order to survive a challenge made under the Establishment Clauses, a statute or government action must meet the following tests: the statute or government action must have a secular purpose; the principal or primary effect of the statute or action must be one that neither advances nor inhibits religion; and the statute or action must not foster excessive government entanglement with religion.

6. In this matter, it is a government action, the sheriff's exercising of his statutory authority to appoint deputies by the appointment of employees employed, paid, and supervised by a private religious institution, not the statute itself, that forms the basis of

the constitutional challenge. It is clear that the sheriff's appointment of deputies has an underlying purpose that is secular in nature. There was no claim that the college's public safety officers used their positions as deputy sheriffs to proselytize on behalf of their employer or to infringe the religious liberties of others; accordingly, there was no showing that the appointment of the officers as deputy sheriffs had the primary effect of advancing or inhibiting religion. The trial court found, and the record supports, that there is nothing in the nature of the appointment of the college's public safety officers as deputy sheriffs that would create a relationship between the sheriff and the college that would cause an excessive entanglement of church and state. Accordingly, the appointment of the officers as deputy sheriffs does not violate the Establishment Clauses of the United States and Michigan Constitutions.

Affirmed.

1. SHERIFFS AND CONSTABLES — APPOINTMENT OF DEPUTY SHERIFFS — COLLEGE PUBLIC SAFETY OFFICERS — RELIGIOUS INSTITUTIONS.

County sheriffs are statutorily empowered to appoint at their discretion as deputy sheriffs public safety officers who are employed by private religious colleges (MCL 51.70).

2. CONSTITUTIONAL LAW — ESTABLISHMENT CLAUSE.

A statute or government action, in order to survive a challenge under the Establishment Clauses of the United States and Michigan Constitutions, must meet the following tests: the statute or government action must have a secular purpose; the principal or primary effect of the statute or action must be one that neither advances nor inhibits religion; and the statute or action must not foster excessive government entanglement with religion (US Const, Am I; Const 1963, art 1, § 4).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Ronald J. Frantz*, Prosecuting Attorney, and *Jon Hulsing*, Assistant Prosecuting Attorney, for the people.

*Hann Persinger, P.C.* (by *Donald H. Hann*), for the defendant.

Amicus Curiae:

*Cohl, Stoker & Toskey, P.C.* (by *John R. McGlinchey*), for Michigan Sheriffs' Association.

Before: GRIFFIN, P.J., and GAGE and METER, JJ.

GRIFFIN, P.J. Defendant appeals by leave granted from the circuit court order affirming the decision of the district court denying defendant's motion to suppress and finding defendant guilty of operating a vehicle while under the influence of intoxicating liquor (OUIL), MCL 257.625(1)(a). This appeal from an OUIL conviction raises the novel issue whether the sheriff's appointment of employees of a religiously affiliated college as deputy sheriffs with full arrest powers extending to violations of state law on public streets is impermissible under state law or is a violation of the Establishment of Religion Clauses of the United States or Michigan Constitutions, US Const, Am I; Const 1963, art 1, § 4. We, like the circuit court, answer "no" and therefore affirm.

I

STATEMENT OF FACTS

A stipulation of facts, entered by the parties in the district court, sets forth the events underlying this appeal. Kevin Cisler and Chad Wolters, employees of the Hope College Public Safety Department, arrested defendant on July 15, 1997, on a public street in the city of Holland after observing his erratic driving. The officers were en route from one Hope College site to another college-owned site at the time of defendant's arrest, and none of the driving observed by the officers that led to the stop took place on or adjacent to Hope College property. Defendant concedes that

the officers' observations about defendant's driving and actions on the day in question would have allowed a legal traffic stop by lawful police officers.

Cisler and Wolters were deputized by the Ottawa County Sheriff and certified as police officers after completing a training course required of all state police officers offered by the Michigan Law Enforcement and Training Council. The officers' status as deputy sheriffs was in effect at the time of the arrest. Hope College hired, paid, and supervised Cisler, Wolters, and other officers of the college's public safety department. The Ottawa County Sheriff exercised no supervision over the department or the officers in question.

The parties further stipulated that Hope College is a private institution affiliated with the Reformed Church of America, that the Board of Directors of Hope College must include a certain number of ordained ministers, that a certain number of the directors are elected by the Synod of the Reformed Church, and that Hope College holds itself out as a Christian college in printed material and public information.

In the district court, defendant filed a motion to suppress the evidence arising from the arrest and to dismiss the OUIL case against him, arguing that the Hope College Public Safety Department and its officers were not authorized to make traffic stops and arrest individuals off Hope College property and that to do so violated the Establishment Clauses of the Michigan and United States Constitutions. The district court denied defendant's motion and, following a bench trial, found defendant guilty of the OUIL offense and suspended his driver's license for six months.

On appeal, the Ottawa Circuit Court, Edward R. Post, J., in a ten-page written opinion affirmed the district court's decision denying defendant's motion to suppress and the court's subsequent conviction of defendant. We granted defendant's application for leave to appeal.

II

STANDARD OF REVIEW AND STANDING

Interestingly, defendant admits that he "was a drunk driver, an admitted nemesis on the road, to the public, and to himself," and he "does not claim that an injustice was done in this case . . . ." However, defendant contests the legal authority of the Hope College officers to make the arrest. Defendant argues that the stop and the resulting arrest were unlawful because the stop was not made on college property and was therefore outside the scope of the Hope College officers' jurisdiction. Defendant further contends that the Ottawa County Sheriff did not have the requisite statutory authority to appoint the Hope College public safety officers as general interest deputies, because they were neither compensated by a governmental unit nor directly under the government's control or supervision. We disagree.

Our standard of review of a lower court's ruling with respect to a motion to suppress is set forth in *People v Marsack*, 231 Mich App 364, 372; 586 NW2d 234 (1998):

> In general, a trial court's [factual] findings at an evidentiary hearing are reviewed for clear error. However, a trial court's ruling on a motion to suppress the evidence is

reviewed under the de novo standard for all mixed questions of fact and law, and for all pure questions of law.

See also *People v Nelson*, 443 Mich 626, 631, n 7; 505 NW2d 266 (1993), and *People v Goforth*, 222 Mich App 306, 310, n 4; 564 NW2d 526 (1997).

Questions of law are reviewed de novo. *City of Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 487; 608 NW2d 531 (2000). Statutory interpretation is a question of law that is subject to review de novo by this Court. *Rose Hill Center, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997). In *Massey v Mandell*, 462 Mich 375, 379-380; 614 NW2d 70 (2000), our Supreme Court discussed the principles of statutory construction, stating:

> In examining a statute, it is our obligation to discern the legislative intent that may reasonably be inferred from the words expressed in the statute. *White v Ann Arbor*, 406 Mich 554, 562; 281 NW2d 283 (1979). One fundamental principle of statutory construction is that "a clear and unambiguous statute leaves no room for judicial construction or interpretation." *Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993). Thus, when the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is to apply the terms of the statute to the circumstances in a particular case. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). Concomitantly, it is our task to give the words used by the Legislature their common, ordinary meaning. MCL 8.3a; MSA 2.212(1).

As a preliminary matter, we reject the prosecution's argument that defendant lacked standing to object to the appointment of the deputies or the remuneration, if any, that the sheriff and the county board of commissioners provided the deputies. Defendant chal-

lenged his arrest as being an arrest without legal
authority and in violation of the United States and
Michigan Constitutions, which challenge necessarily
entailed a review of the process concerning the
appointment of deputy sheriffs. Defendant had a suffi-
cient interest at stake, i.e., not having a criminal con-
viction with accompanying license suspension and
fines, to provide defendant with standing to challenge
the appointment process. See *Lee v Macomb Co Bd of
Comm'rs*, 464 Mich 726; 629 NW2d 900 (2001). See
also *Lujan v Defenders of Wildlife*, 504 US 555, 560-
561; 112 S Ct 2130; 119 L Ed 2d 351 (1992).

III

### MICHIGAN STATUTES

The office of county sheriff is constitutionally cre-
ated, Const 1963, art 7, § 4, and the duties and author-
ity of the sheriff are established by statute, MCL 51.68
*et seq. Capitol City Lodge 141, FOP v Meridian Twp*,
90 Mich App 533, 539; 282 NW2d 383 (1979). One of
the powers provided to each sheriff by the Legislature
is the power to appoint deputies to assist the sheriff
in enforcing state law. MCL 51.70 provides in perti-
nent part:

> Each sheriff may appoint 1 or more deputy sheriffs at the
> sheriff's pleasure, and may revoke those appointments at
> any time. Persons may also be deputed by a sheriff, by an
> instrument in writing, to do particular acts, who shall be
> known as special deputies and each sheriff may revoke
> those appointments at any time.

Defendant acknowledges the broad authority of a
sheriff to appoint deputies pursuant to MCL 51.70 and
he "do[es] not question that the Hope officers have

the power to protect the special interests of Hope College."[1] The stipulation of fact signed by the parties indicates that the officers were "appointed special deputies by the Ottawa County Sheriff."

The crux of defendant's argument is that Officers Cisler and Wolters were acting as general interest deputies[2] and the Ottawa County Sheriff had no authority to appoint employees of a private college as deputy sheriffs with full arrest powers extending beyond campus property to violations of state law on public streets. Defendant maintains that "[t]he entire legislative scheme shows that law enforcement officers are to be paid for and supervised by public bodies if they are not protecting the property and special private interests of their employer." According to defendant, to hold otherwise would permit a sheriff

---

[1] The deputy sheriff affidavit signed by the officers in question does limit their authority off campus, providing in pertinent part:

THAT I shall execute the powers of Deputy Sheriff to enforce the general laws only when specifically authorized to do so by a representative of the Ottawa County Sheriff's Department and/or Ottawa County Central Dispatch. I understand, however, that when acting outside my jurisdiction, I may execute law enforcement authority as a Deputy Sheriff without prior authorization, if emergency circumstances preclude obtaining authorization to execute the powers of Deputy Sheriff. In every such circumstance which results in a physical arrest, I will reduce the facts and circumstances surrounding my actions to writing and forward the writing to the Sheriff within 72 hours of the circumstance.

[2] At trial, defense counsel stated:

Your Honor, they're—they're trying to act as general interest deputies, and that would be what they were doing here. I think the only authority would be to be special interest deputies to protect the private interest. I think they can be appointed as special interest deputy, but not a general interest deputy. In this instance, they were acting as a general interest deputy.

to "create a private police force without any public restraint or control."

We initially note that MCL 51.70 does not expressly limit a sheriff's authority to deputize individuals to only county employees or persons employed by a particular agency. In support of his argument, defendant nonetheless cites two statutes that purportedly place limitations on the sheriff's power to appoint deputies under the present circumstances. Defendant first relies on MCL 45.401, which provides in pertinent part:

> The county board of commissioners of each county in this state may direct the payment to the sheriff, under-sheriff, and deputy sheriffs and to the county clerk, county treasurer, register of deeds, and their deputies out of the general fund in the treasury of the county, salaries as the board considers proper . . . . The salaries shall be compensation in full for all services performed by the sheriff, under-sheriff, and deputy sheriffs . . . .

Defendant also maintains that the Ottawa County Sheriff's ability to appoint Cisler and Wolters as deputies is limited by MCL 45.405, which states in relevant part:

> The sheriff shall appoint an under-sheriff and may, in his discretion, appoint such deputy sheriffs as may be provided for by the board of supervisors. The board of supervisors . . . is hereby empowered to hear, determine and allow the claims of the sheriff and his deputies . . . who receive a salary by virtue of this act, for any money actually expended by them in pursuance of their official duties, the same as other claims against the county.

Defendant argues that the above statutes require that the sheriff and deputies be paid either by fees or by a salary from a county's general fund in lieu of

fees and allow the appointment of deputies only as provided for by the county board of supervisors. Defendant contends that Officers Cisler and Wolters could not be authorized as deputies because Hope College paid their salaries and no compensation was provided by Ottawa County. This was, according to defendant, an improper delegation of the sheriff's powers to a private nongovernmental agency.

However, we hold that defendant misconstrues the plain language and underlying purpose of these statutes, both of which are directed to matters of compensation of sheriffs and their deputies. MCL 45.401 merely addresses a possible source, the general fund, from which a county board of commissioners may pay sheriffs and their deputies, and it establishes the authority of the board to set appropriate salaries for these positions. The statute does not state, either expressly or implicitly, that only those paid out of the general fund are authorized deputies. Further, the language of MCL 45.401 is not mandatory, in that it states that salaries *may* be paid from the general fund. The county board of commissioners can, and does, exercise budgetary control over the sheriff. However, while MCL 45.401 may, in practical terms, impose budgetary constraints on the number of deputies that can be appointed and their compensation, it does not otherwise limit the Ottawa County Sheriff's authority pursuant to MCL 51.70 to appoint the Hope College officers as deputies and does not require that such deputies be paid employees of the county. Defendant's argument in this regard is therefore without merit.

Defendant has not sufficiently elaborated his argument concerning how MCL 45.405 precludes the appointment of the Hope College officers as deputies.

Issues insufficiently briefed are deemed abandoned on appeal. *Palo Group Foster Care, Inc v Dep't of Social Services*, 228 Mich App 140, 152; 577 NW2d 200 (1998); *Dresden v Detroit Macomb Hosp Corp*, 218 Mich App 292, 300; 553 NW2d 387 (1996). In any event, MCL 45.405, like MCL 45.401, addresses the element of financial control that the county board of supervisors may exercise over the sheriff and his office and the practical budgetary limitations that may limit the number of deputies who are employed and paid by the county.[3] MCL 45.405 does not expressly or implicitly prohibit the sheriff from appointing deputies such as Cisler and Wolters, who are not compensated by the county, as deputy sheriffs with full, albeit supervised,[4] arrest powers. Moreover, this statute complements MCL 51.70 to the extent that it allows the sheriff to make appointments "in his discretion."

In a related argument, defendant maintains that the law enforcement powers of the Hope deputies are limited to the private interests of their employer, Hope College, pursuant to MCL 45.406,[5] which con-

---

[3] Cf. *Capitol City Lodge 141, FOP, supra* at 541-542, cited by defendant, which confirms that while budget concerns rest with the commissioners or contracting municipality, the statutory authority of the sheriff to appoint deputies is not otherwise affected or restricted ("When a township calls upon the county sheriff to provide special police protection pursuant to MCL 41.181; MSA 5.45(1) its right of control over the sheriff is limited to the financial aspects of this relationship. The deputies utilized to provide police protection are solely responsible to the sheriff, thus prohibiting the sheriff from becoming an agent of the township since the township has no right to control the sheriff's direction of these deputies.").

[4] See n 1, *supra* at 362.

[5] MCL 45.406 provides:

In times of emergency the sheriff, upon order of the circuit court for the county, made upon the petition of the sheriff or prosecuting

fers on the sheriff the authority to appoint deputies to protect private interests and states that deputies so appointed shall receive no fees from the county for those services. Defendant contends that the officers in question, neither authorized nor paid for by the county, exceeded the scope of their authority in enforcing the general law on property not controlled by their employer. Defendant contends that

> if the sheriff can appoint limitless deputies who are not controlled by the public, there would be no need for MCL 45.406 . . . or the statute authorizing four-year public colleges to form police departments, MCL 390.1511 . . . or authorizing railroad police to enforce general law while on duty, MCL 462.377 . . . or giv[ing] police powers to private security guards while on their employer's premises, MCL 338.1080 . . . .

However, there is no evidence in this matter that the Hope officers were deputized pursuant to MCL 45.406 or for the limited purpose of protecting the private interests of Hope College. In any event, contrary to defendant's contention, we conclude that this statute expands, rather than constricts, a sheriff's overall authority to appoint deputies. It grants to a sheriff the discretionary authority to appoint deputies to protect private as well as public interests, with the specification that deputies appointed for this purpose are not to be paid by the county. We do not construe MCL 45.406 as a limitation on the sheriff's ability to ap-

---

attorney of the county, showing the necessity therefore, may appoint for such day or days as may be required, 1 or more additional deputies, who, for services actually rendered, shall receive an amount as determined by the board of supervisors. . . . The sheriff may also appoint deputy sheriffs to protect private interests, who shall receive no compensation from the county for services on account of such appointment.

point deputies who, as we have already concluded, need not necessarily be paid by the county.

We find unpersuasive defendant's argument that police officers employed by four-year public colleges and universities are specifically authorized to act as general police officers under MCL 390.1511 and "if the Legislature wanted private schools to have the same authority, it would have said so." "The purpose of statutory interpretation is to give effect to the intent of the Legislature." *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997). In the case at hand, the plain language of MCL 51.70 allows the sheriff complete discretion in appointing who will be a deputy. There is no requirement that a county sheriff appoint campus police, railroad officers, or security guards as deputies. In fact, very few security officers are deputized. The Legislature presumably recognized this and allowed such entities, through the above statutes, to form their own police or security departments with police powers independent of the sheriff. However, this in no way implicitly limits the ability of the sheriff to deputize these officers if he so desires.

From a public policy standpoint, as noted by amicus curiae Michigan Sheriff's Association, "[i]n almost all Michigan counties, resources for law enforcement are stretched to the limit. Few, if any, Michigan counties have the luxury to add more law enforcement officers to their budgets without seeking additional revenue from the public they serve." Deputizing law enforcement officers who are not county employees extends law enforcement without increasing a county's costs in so doing. While it is true that a county board of commissioners may restrict, for financial reasons, the number of county-employed deputies hired by the sheriff, it also is true that the

county cannot dictate whom the sheriff may choose to deputize.

We therefore hold that the above statutes relied on by defendant do not preclude the Ottawa County Sheriff from appointing employees of a religiously affiliated college as deputy sheriffs with full arrest powers extending to violations of state law on public streets. Defendant's fear that our statutes, if so construed, in effect permit the sheriff in this case to create a "private" police force under no public control, is baseless. Those individuals who are deputized by a sheriff are first and foremost bound by the confines of the law and serve at the sheriff's pleasure. The sheriff, in turn, stands publicly accountable for any abuse of his authority. Defendant's argument is therefore without merit.

IV

THE *NAT'L UNION* DECISION

Defendant's additional reliance on *Nat'l Union of Police Officers Local 502-M, AFL-CIO v Wayne Co Bd of Comm'rs*, 93 Mich App 76; 286 NW2d 242 (1979), as support for the proposition that a sheriff may delegate his law enforcement powers only to subordinate governmental agencies, and not to private agencies, is misplaced. In *Nat'l Union, id.* at 84, this Court addressed "the question whether the collective bargaining requirements of PERA [the public employment relations act, MCL 423.201 *et seq.*] impliedly authorize a sheriff to enter into a collective bargaining agreement empowering the arbitrator of employee grievances to modify the sheriff's order reassigning a deputy to duties not involving law enforcement powers

upon finding the deputy guilty of misconduct." The *Nat'l Union* Court held that although the sheriff's power to hire, fire, and discipline "is not absolute" and may be limited by the PERA,

> the matter of which of his deputies shall be delegated the powers of law enforcement entrusted to him by the constitution is a matter exclusively within his discretion and inherent in the nature of his office, and may neither be infringed upon by the Legislature nor delegated to a third party . . . .
>
> We therefore conclude that the legislative delegation of the executive police power to the sheriff may not be limited by a collective bargaining agreement as authorized by PERA, but remains vested exclusively in the sheriff. This being so, the arbitrator exceeded his authority under the contract in ordering the sheriff to restore plaintiff McKeon's law enforcement powers before the sheriff, in the exercise of his discretion, was prepared to do so. . . .
>
> . . . We limit our holding to this: that the power to delegate the law enforcement powers entrusted to him [the sheriff] by our constitution is vested exclusively in the sheriff, and may not be bargained away or interfered with by any agency or individual. [*Id.* at 89-90 (citations omitted).][6]

Contrary to defendant's contention, the above holding does not suggest that a sheriff may delegate his powers only to governmental agencies. Moreover, we note that the *Nat'l Union* Court did not expressly address the distinction between delegating to private versus public agencies.

Defendant nonetheless points to the following language from *Nat'l Union* in support of his argument:

> [I]t may be said that the sheriff's powers and duties comprise a part of the police power of the state, which may be

---

[6] See also *Fraternal Order of Police, Ionia Co Lodge No 157 v Bensinger*, 122 Mich App 437, 441-446; 333 NW2d 73 (1983).

delegated to subordinate governmental agencies or divisions, but may not be otherwise delegated or bargained away, being an inherent attribute of sovereignty. [*Id.* at 82.]

However, addressing defendant's citation of what it correctly deemed to be dicta, the circuit court herein answered:

In so stating, the *National Union* Court cited Justice Smith's dissenting opinion in [*People v*] *Robinson*, [344 Mich 353, 357; 74 NW2d 41 (1955)] *supra*. In *Robinson*, Justice Smith addressed the issue whether the sheriff's department can bargain away to a private profit corporation its police powers. However, there is an important distinction between the facts raised by Justice Smith in his dissent in *Robinson* and the facts presented in this case. Here, the sheriff is not appointing Hope College itself to perform police functions. Instead, the sheriff has appointed *individuals* to assist him in enforcing the laws of the state. In this case, power flows directly from the sheriff to his individuals' [sic] appointments [sic], not to a corporation. The sheriff does not relinquish any of his statutory authority in the process. Most important, the sheriff does not delegate his right to appoint and remove deputies.

Justice Smith stated that "[w]e know nothing of the qualifications imposed by the directors of the private corporation in their selection of 'officers.' " *Robinson, supra* at 358. He asked the question, "how do its bylaws square with our great constitutional principles?" Justice Smith's concerns are not applicable in the instant case. First, the Hope officers were trained and certified by the State, not some private commercial corporation. Second, although they may be paid by Hope College, the source of the officers' authority to enforce state law derives directly from the sheriff who retains the ultimate power and authority to dismiss the deputy sheriffs at will. Although the deputy sheriffs in this case do not answer directly to the Sheriff on a daily basis, the Sheriff's ability to unilaterally and without cause revoke the officers' status as deputy sheriffs is sufficient control over the deputies to ensure that they follow state and constitutional law. The deputy sheriffs do not have super pow-

ers, nor have they infringed on personal liberties in this case. Furthermore, Hope College is not the exclusive enforcer of the laws of the state; the sheriff's department in this case retains its law enforcement power and authority. Unlike this case involving the Hope officers, whether the sheriff had ultimate control over the employees of the contracting corporation in the *Robinson* case is not at all clear, which further distinguishes the two from the instant case. [Emphasis in original.]

We agree with the sound reasoning of Ottawa Circuit Judge Post and conclude that this Court's decision in *Nat'l Union* in no manner detracts from the authority of the Ottawa County Sheriff to appoint the Hope College public safety officers as deputies. As the trial court noted, although Cisler and Wolters are paid employees of Hope College, the sheriff retains the power to dismiss the Hope College officers from their position as deputy sheriffs. Moreover, pursuant to the deputy sheriff affidavit signed by Cisler and Wolters, any time the officers acted to enforce the general law outside the confines of campus property, the action was required to be authorized by the sheriff's department unless an emergency was involved and, in that instance, the officer was required to forward a report to the sheriff within seventy-two hours. There is no supporting documentation suggesting that the Hope College officers may enforce any college directive, dictated by school personnel, against members of the public off campus, and in fact the evidence indicates that the officers acted within the confines of their authority in arresting defendant. The stop and arrest of an obviously intoxicated driver reasonably could be considered, under the circumstances, to be an emergency situation.

In sum, we conclude that it is permissible under state law for the Ottawa County Sheriff to appoint Hope College public safety officers as deputy sheriffs with the power and authority to enforce the laws of the state on public property.

V

THE ESTABLISHMENT OF RELIGION CLAUSES

Next, we decide whether these appointments are unconstitutional. In yet another issue of first impression, defendant argues that the use of employees of a religiously affiliated college as deputies violates the Establishment of Religion Clause of the First Amendment of the United States Constitution and art 1, § 4 of the Michigan Constitution. According to defendant, using the employees of a religiously affiliated college as deputies has the primary effect of improperly advancing religion because "knowing their paycheck comes from a Christian college could greatly affect the [officers'] actions," and "[a]llowing a Christian college to become a public police force is an excessive entanglement."

Issues of constitutional law are reviewed de novo. *People v Stevens*, 460 Mich 626, 631; 597 NW2d 53 (1999); *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998); *In re Carey*, 241 Mich App 222, 226; 615 NW2d 742 (2000).

In *Porth v Roman Catholic Diocese of Kalamazoo*, 209 Mich App 630, 634; 532 NW2d 195 (1995), this Court noted the constitutional basis of the First Amendment's Establishment Clause:

> The First Amendment of the United States Constitution, which is applicable to the states pursuant to the Fourteenth

Amendment, US Const, Am XIV, *Cantwell v Connecticut,* 310 US 296; 60 S Ct 900; 84 L Ed 1213 (1940), provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Our Michigan Constitution also contains a Free Exercise Clause, Const 1963, art 1, § 4. See, generally, *Alexander v Bartlett,* 14 Mich App 177, 181; 165 NW2d 445 (1968).

The Michigan Constitution specifically provides:

Every person shall be at liberty to worship God according to the dictates of his own conscience. No person shall be compelled to attend, or, against his consent, to contribute to the erection or support of any place of religious worship, or to pay tithes, taxes or other rates for the support of any minister of the gospel or teacher of religion. No money shall be appropriated or drawn from the treasury for the benefit of any religious sect or society, theological or religious seminary; nor shall property belonging to the state be appropriated for any such purpose. The civil and political rights, privileges and capacities of no person shall be diminished or enlarged on account of his religious belief. [Const 1963, art 1, § 4.]

When scrutinizing challenged legislation or official conduct to determine whether it violates the First Amendment, the United States Supreme Court has "repeatedly emphasized [its] unwillingness to be confined to any single test or criterion in this sensitive area." *Lynch v Donnelly,* 465 US 668, 679; 104 S Ct 1355; 79 L Ed 2d 604 (1984), citing *Tilton v Richardson,* 403 US 672, 677-678; 91 S Ct 2091; 29 L Ed 2d 790 (1971). Nevertheless, the United States Supreme Court has most often utilized the three-pronged test set forth in *Lemon v Kurtzman,* 403 US 602, 612-613; 91 S Ct 2105; 29 L Ed 2d 745 (1971), in discerning unconstitutional government action. According to the so-called "*Lemon* test," "[f]irst, the statute must have a secular legislative purpose; second, its principal or

primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.' " *Id.* (citations omitted). See also *McLeod v Providence Christian School*, 160 Mich App 333, 345-346; 408 NW2d 146 (1987). If the government action, as applied, violates any one prong of the *Lemon* test, it is unconstitutional. *Edwards v Aguillard*, 482 US 578, 583; 107 S Ct 2573; 96 L Ed 2d 510 (1987).

Despite continuing debate regarding whether the *Lemon* test is the appropriate yardstick by which to measure Establishment Clause jurisprudence,[7] and although this Court has noted that Michigan's Establishment Clause differs from its federal counterpart and may afford additional protection to the free exercise of religion,[8] given its apparent viability[9] we choose to apply the *Lemon* test here in evaluating defendant's constitutional challenges.[10]

It is first necessary to clarify the governmental action at issue in the present case. We conclude that the governmental action is not the statute, MCL 51.70, itself, but the application of that statute whereby public safety officers, employed, paid, and supervised by a private religious institution, are deputized by the sheriff.

---

[7] See, e.g., *Wallace v Jaffree*, 472 US 38, 68; 105 S Ct 2479; 86 L Ed 2d 29 (1985) (O'Connor, J., concurring); *Lee v Weisman*, 505 US 577, 644; 112 S Ct 2649; 120 L Ed 2d 467 (1992) (Scalia, J., dissenting); *American Civil Liberties Union of Ohio v Capital Square Review & Advisory Bd*, 243 F3d 289, 305-306 (CA 6, 2001).

[8] See *Porth, supra* at 637-638.

[9] See *Lamb's Chapel v Center Moriches Union Free School Dist*, 508 US 384, 395; 113 S Ct 2141; 124 L Ed 2d 352 (1993).

[10] Defendant assumes that the *Lemon* test applies to both his federal and state constitutional claims and has cited no authority to the effect that an alternative test should be applied to his state constitutional claims.

Defendant herein concedes that the underlying purpose of deputization of the officers in question is law enforcement, which is secular in nature. Indeed, our own review of the deputization at issue indicates no intent on the part of the government to either aid, promote, restrict, hinder, or otherwise affect religion or any religious organization. As the circuit court correctly noted,

> The governmental action at issue here does [have a secular purpose], i.e., law enforcement. The police function is clearly an attribute inherent in sovereignty. The sheriff appoints deputies under MCL 51.70; MSA 5.863 to assist him or her in enforcing the laws of the state. The statute is neutral on its face, making no reference to religious affiliation or nonaffiliation. The statute itself is nonideological and there is no contention that it is applied in any biased fashion with regard to religious affiliation. The only requirement to become a deputy sheriff, according to the stipulated facts, is to receive training and certification by the state.

Thus, resolution of the Establishment Clause issue focuses on the second and third prongs of the *Lemon* test, i.e., whether the principal or primary effect of the challenged state action either advances or inhibits religion and whether there is excessive entanglement between church and state.

In its well-reasoned opinion, the circuit court ruled as follows regarding application of the second and third prongs of *Lemon* to the present circumstances:

> [U]nder the effect prong of the *Lemon* test, this Court must determine whether the principal or primary effect of the challenged state action either advances or inhibits religion. This Court finds that it does neither. There is no contention in this case that the officers are using their positions as deputy sheriffs to proselytize for the Church. Further, there is no claim that the Hope officers are using their

positions as deputy sheriffs to enforce private or religious laws. Likewise, there is no contention that the officers are using their police powers to infringe on religious liberties. No assertion had been set forth that appointments of the individual deputies have been made with regard to the sectarian or non-sectarian disposition of the officer. Accordingly, this Court finds that any contention by defendant that appointing Hope officers as deputy sheriffs has the primary effect of aiding the religious purposes of the church-related college is without merit. Accordingly, this Court finds that the second prong of the *Lemon* test has not been violated.

Finally, this Court addresses the third prong of the *Lemon* test: whether the state action has fostered excessive entanglement between church and state. The Court in *Lemon* points out that there is no requirement of total separation between church and state. *Lemon, supra,* 403 US at 614. Some relationship between government and religious organizations is inevitable. *Id.* . . .

With respect to the character and purpose of Hope College, the parties agree that it is a college affiliated with the Christian Reformed Church in America. Hope College submits in its brief that its purpose is to educate students in a variety of secular disciplines and although Hope College has a religious affiliation, religious indoctrination is not a substantial purpose or activity of the college.

. . . [T]his Court finds that the character and purpose of Hope College, although it is affiliated with the Reformed Church in America, weighs against a finding of excessive entanglement between church and state. There are no facts before this Court which would cause it to find otherwise.

Next, the nature of the "aid" provided Hope College is sectarian. The "aid" consists of allowing Hope College to hire its own security officers for the main purpose of patrolling its private property to promote the safety of its students and employees. Because the officers are deputized, they are able to enforce not only the school's private rules, but may also enforce the laws of the state on Hope's campus, as well as on public property. However, patrolling public streets is merely incidental to their primary purpose of law enforcement on Hope's campus. Regardless, the nature of the "aid" in this case is provided on a nonideological

basis. Defendant does not contend that deputies are chosen based on religious or nonreligious affiliations. The only conditions required of the deputies include training and certification by the state. . . . The nature of state aid in this case weighs against a finding of excessive entanglement of church and state.

Finally, an analysis of the resulting relationship between the religious authority and the government establishes that there is no excessive entanglement. In fact, there is surprisingly little contact or coordination between Hope College and the sheriff's department. Notably, defendant has not presented any facts establishing any contact at all, aside from the initial training and certification. Hope College hires, fires, supervises and directs its officers. Although the sheriff retains the statutory authority to unilaterally fire the Hope officers at will, there does not appear to be any active involvement between Hope College and the sheriff's department. Accordingly, this Court concludes, after its analysis of the three factors that constitute the entanglement prong of the *Lemon* test, that there is no excessive entanglement between church and state in this case.

We agree with the circuit court's analysis and adopt it as our own. The principal or primary effect of the governmental action in the present case does not advance or inhibit religion. The potential constitutional danger is that the Hope College officers would impose, either intentionally or inadvertently, their personal religious beliefs (or those of the college) on the general public—the danger being the effect of the religious beliefs on the officers' actions when the officers act outside the jurisdiction of Hope College.[11] We conclude that danger is minimal. Although a Hope College officer may be affected to a degree by relig-

---

[11] Defendant argues in this regard, "Knowing their paycheck comes from a Christian college could greatly effect [sic] their actions. There is no evidence in this case that it did, but this is one case. The potential for abuse is great."

ious considerations in making discretionary decisions, ultimately the officer, acting in public under appointment as a deputy sheriff, can only enforce the laws of Michigan, is bound by the laws of Michigan, and, off campus, cannot enforce any other laws or rules such as those promulgated by Hope College. Any attempt by a Hope College officer to step outside those legal limits would result in disciplinary action, legal action, or the dismissal of any improper arrest. In fact, no evidence was presented in this case indicating that Cisler and Wolters were significantly influenced in the performance of their duties by doctrine of the Reformed Church.

Further, the primary benefits that flow from appointing the Hope College officers as deputies are strictly secular in nature. Private institutions, the general public, and the state are all benefited by having increased law enforcement capabilities and the consequent protection of persons and property. Thus, we agree with the circuit court that the second prong of the *Lemon* test has not been violated.

As the circuit court noted, the third prong of the *Lemon* test concerns whether the governmental action fosters excessive governmental entanglement with religion, requiring an examination of the character and purpose of institutions that are benefited, the nature of the aid that the state provides, and the resulting relationship between the government and the religious authority. *Lemon, supra* at 615.

As stipulated by the parties, Hope College is a private college that, although affiliated with the Reformed Church in America, has as its purpose the education of students in a variety of secular disciplines. It is well established that in order to be deemed a religious institution for First Amendment

purposes, the religious character of the institution must be "so pervasive that a substantial portion of its functions are subsumed in the religious mission." *Hunt v McNair*, 413 US 734, 743; 93 S Ct 2868; 37 L Ed 2d 923 (1973). Even "formal denominational control over a liberal arts college does not render all aid to the institution a violation of the Establishment Clause." *Id.* at 746, n 8.

In *Tilton v Richardson, supra* at 685, the United States Supreme Court addressed an Establishment Clause challenge and noted that in contrast to students in elementary and secondary church-related schools, college students are less impressionable and less susceptible to religious indoctrination, and that "by their very nature, college and postgraduate courses tend to limit the opportunities for sectarian influences by virtue of their own internal disciplines. Many church-related colleges and universities are characterized by a high degree of academic freedom and seek to evoke free and critical responses from their students." In *Tilton*, the Court concluded that all four universities involved therein receiving government aid, although governed by Catholic organizations and populated by predominantly Catholic faculties and student bodies, were "institutions with admittedly religious functions but whose predominant higher education mission is to provide their students with a secular education." *Id.* at 687.

In the case at hand, although Hope College is closely affiliated with a religious denomination, the record indicates it neither functions as a religious governing body nor as a church and does not subordinate secular education to religious doctrine. It is therefore not a religious institution within the meaning of the First Amendment. Consequently, the

mandate of the United States Supreme Court prohibiting a state from delegating an important discretionary governmental power to a religious institution or sharing such power with a religious institution is not applicable here. Compare *Larkin v Grendel's Den, Inc*, 459 US 116, 127; 103 S Ct 505; 74 L Ed 2d 297 (1982).

Although the remaining entanglement factors are rendered inconsequential in light of the preceding conclusion, we nonetheless note that the only discernible "aid" to Hope College would be the authority granted to the officers to enforce state laws on campus, and in *Tilton, supra* at 687, the Court stated:

> The entanglement between church and state is also lessened here by the nonideological character of the aid that the Government provides. Our cases . . . have permitted church-related schools to receive government aid in the form of secular, neutral, or nonideological services, facilities, or materials that are supplied to all students regardless of the affiliation of the school that they attend.

In the present case, the "aid"—authority to enforce state laws—is secular and nonideological in nature and serves not as a means of protecting or advancing a religious interest, but rather as a neutral vehicle for the protection of the safety of all citizens.

Finally, the resulting relationship between the government and Hope College because of the deputization of the officers does not support a finding that there is excessive government entanglement with religion. As the circuit court noted, Hope College hires, fires, supervises, and pays the officers, and for all practical purposes, "has surprisingly little contact" with the sheriff. The officers could exercise their

powers as deputy sheriffs off campus only if authorized by the sheriff's department or in an emergency.

Having evaluated defendant's constitutional claims pursuant to the three-pronged *Lemon* test, we find no constitutional violation. Under the present circumstances, we hold that the sheriff's appointment of employees of a religiously affiliated college as deputy sheriffs with full arrest powers extending to violations of state law on public streets does not offend the Establishment Clauses of the United States or Michigan Constitutions.

VI

CONCLUSION

For the above reasons, the circuit court correctly affirmed the decisions of the district court denying defendant's motion to suppress and finding defendant guilty of operating a vehicle while under the influence of intoxicating liquor.

Affirmed.