*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARK LIN BESSNER,

Defendant-Appellant.

UNPUBLISHED
April 22, 2021

No. 350141
Wayne Circuit Court
LC No. 18-000923-01-FC

Before: FORT HOOD, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of involuntary manslaughter, MCL 750.321. Defendant was sentenced to 5 to 15 years' imprisonment for the involuntary manslaughter conviction. We affirm.

This case arises from an August 26, 2017 incident near the intersection of Rossini and Gratiot in Detroit. In this incident, defendant, while on duty as a Michigan State Police ("MSP") trooper and riding in the passenger seat of an MSP scout car, fired a Taser at Damon Grimes while Grimes was riding an all-terrain vehicle ("ATV"), causing Grimes to crash his ATV into a parked motor vehicle and die.[1] When he died, Grimes was 15 years old, he was 6 feet and 1 inch tall, and he weighed 235 pounds.

On appeal, defendant first argues that the trial court abused its discretion in refusing to admit MSP Trooper Ethan Berger's police report under various hearsay exceptions. Defendant's argument fails.

---

[1] Defendant was originally tried in October 2018, but that trial ended with a hung jury and a mistrial. Defendant was retried in April 2019, and the jury in the second trial found him guilty of involuntary manslaughter. Unless stated otherwise, all references in this opinion to the trial are to the second trial.

Trooper Berger was defendant's partner on the date of the incident and was driving the scout car when defendant fired his Taser at Grimes. Trooper Berger invoked his Fifth Amendment privilege and did not testify at either of defendant's trials. Trooper Berger prepared a police report indicating defendant said that he feared Grimes was armed and that defendant said he deployed his Taser because he saw Grimes reaching toward his waistband.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion, and any preliminary questions of law are reviewed de novo. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). An abuse of discretion exists when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible unless it falls within a recognized exception under the Michigan Rules of Evidence. MRE 802; *People v Mesik (On Reconsideration)*, 285 Mich App 535, 538; 775 NW2d 857 (2009). If there are multiple levels of hearsay, each hearsay statement must fall within a recognized exception under the Michigan Rules of Evidence. MRE 805; *Mesik*, 285 Mich App at 538.

The trial court correctly recognized that, even if defendant's statement to Trooper Berger constituted an excited utterance under MRE 803(2), Trooper Berger was unavailable to testify about that statement, given his valid invocation of the Fifth Amendment.[2] Although defendant's statement was contained in Trooper Berger's police report, defendant has failed to establish that the police report itself is admissible under any recognized hearsay exception. Police reports are excluded from the hearsay exception for public records and reports. See MRE 803(8). See also *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App 243, 254; 805 NW2d 217 (2011) (noting that police reports "generally are inadmissible hearsay").

The trial court correctly ruled that Trooper Berger's police report was not admissible under MRE 804(b)(3), which provides the following hearsay exception for statements against interest:

> *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

---

[2] Defendant presents no discernible argument on appeal challenging the trial court's ruling that Trooper Berger's invocation of the Fifth Amendment was valid. Defendant's appellate argument is focused on the exclusion of defendant's statement to Trooper Berger and the police report.

"[T]he mere fact that the declarant invoked his Fifth Amendment right not to testify does not make the statement against penal interest." *People v Barrera*, 451 Mich 261, 270; 547 NW2d 280 (1996). "[I]n order to be probative of the declarant's guilt, the statement must be against the declarant's interest in a real and tangible way. It must actually assert the declarant's own culpability to some degree—it cannot be a statement merely exculpating the accused." *Id.* at 271 (quotation marks and citation omitted). Defendant has failed to explain how Trooper Berger's police report is contrary to Trooper Berger's interest or tended to subject Trooper Berger to civil or criminal liability. Although defendant's statement within the police report tended to exculpate defendant by suggesting that defendant believed that Grimes was armed and reaching for a gun, the statement does not assert Trooper Berger's culpability. The trial court thus correctly ruled that MRE 804(b)(3) was inapplicable.

Nor did the trial court err in ruling that MRE 804(b)(6) was inapplicable. MRE 804(b)(6) provides a hearsay exception for "[a] statement offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." There is no evidence that the prosecutor engaged in or encouraged wrongdoing that was intended to procure Trooper Berger's unavailability. Defendant argues that the prosecutor intimidated or coerced Trooper Berger into invoking his Fifth Amendment right by refusing to grant immunity to Trooper Berger. But the prosecutor was not required to grant immunity to Trooper Berger. Although the prosecutor denied a warrant request for Trooper Berger, the prosecutor had no obligation to rule out pursuing charges later if more evidence comes to light. See *People v Sierb*, 456 Mich 519, 531-532; 581 NW2d 219 (1998) (the prosecutor is free to pursue charges as long as jeopardy has not attached and a statute of limitations has not run). And Trooper Berger's attorney said there had been no promises, threats, or assurances made to Trooper Berger. The trial court correctly ruled that MRE 804(b)(6) was inapplicable.

The trial court also did not abuse its discretion in ruling that the police report was not admissible under the residual hearsay exception of MRE 804(b)(7).[3] MRE 804(b)(7) allows admission of "[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness" if three additional requirements are met. The trial court reasonably determined that there were not adequate guarantees of trustworthiness to warrant admission under MRE 804(b)(7). In his deposition in a related federal civil case, Trooper Berger testified that he edited the report multiple times before finalizing it on August 30, 2017, four days after the incident and four days after defendant's statement to Trooper Berger. Trooper Berger testified that he talked to his attorney when working on the report and that the attorney provided "suggestions or helpful hints" about the report. Given the four-day delay, multiple edits, and consultation of an attorney in preparing the report, the trial court did not abuse its discretion in determining that there were not circumstantial guarantees of trustworthiness.

To the extent defendant suggests that he has been denied his constitutional right to present a defense, his argument fails. The constitutional right to present a defense is not unlimited and

---

[3] Defendant's brief on appeal cites MRE 803(24), but that residual exception applies when a declarant is available. MRE 804(b)(7) is the residual exception when a declarant is unavailable. Because Trooper Berger is unavailable, defendant's argument is analyzed under MRE 804(b)(7).

must "bow to accommodate other legitimate interests in the criminal trial process." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citation omitted). A defendant must "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 474 (quotation marks and citations omitted). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id*. (quotation marks and citations omitted). As discussed, the trial court's rulings conformed with the Michigan Rules of Evidence. Defendant offers no basis on which to conclude that a particular rule is arbitrary or disproportionate to the purpose of the rule. Defendant was not denied his constitutional right to present a defense.

Defendant next argues on appeal that he was entitled to a *Ginther*[4] evidentiary hearing on his motion for a new trial, that *Ginther* hearings are not limited to ineffective assistance of counsel claims, and that defendant needed an evidentiary hearing to develop a record with respect to the prosecutor's failure to provide the defense with impeachment information regarding a prosecution witness, MSP Trooper Christopher Kurish. Defendant's argument fails.

"[A] trial court's decision whether to hold an evidentiary hearing is reviewed for an abuse of discretion. An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008) (citation omitted).

It does not matter whether *Ginther* applies to postconviction evidentiary hearings for issues other than ineffective assistance of counsel. Assuming that a *Ginther* hearing may be held on other types of issues, defendant did not establish in the trial court that he was entitled to an evidentiary hearing on his claim that the prosecutor failed to turn over impeachment information about Trooper Kurish (which is the only ground for a new trial that defendant discusses in this issue).[5] So even if part of the trial court's rationale for not holding an evidentiary hearing was incorrect, i.e., if the court was wrong to suggest that *Ginther* hearings are available only for claims of ineffective assistance of counsel, reversal is not required, given defendant's failure to establish entitlement to an evidentiary hearing. This Court will affirm a trial court's decision if it reached the correct result for a wrong reason. *People v McLaughlin*, 258 Mich App 635, 652 n 7; 672 NW2d 860 (2003).

A trial court should grant a defendant's request for an evidentiary hearing if the defendant establishes that his claim depends on facts that are not in the record. See *People v Ginther*, 390

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[5] Defendant's brief on appeal vaguely alludes to the other grounds asserted in his motion for a new trial but fails to provide any argument to explain why further factual development was needed with respect to any of those other grounds. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "Issues insufficiently briefed are deemed abandoned on appeal." *People v Van Tubbergen*, 249 Mich App 354, 365; 642 NW2d 368 (2002).

Mich 436, 443, 445; 212 NW2d 922 (1973). But a defendant is not entitled to a *Ginther* hearing if the defendant fails to "demonstrate[] any issue for which further factual development would advance [the defendant's] claim." *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009). As the trial court noted, defendant's motion for a new trial failed to provide any details regarding the claim that impeachment information regarding Trooper Kurish was not given to the defense.[6] Defendant also failed to present an offer of proof or other documentation to support his motion. Given the vagueness of defendant's allegation and the lack of support, the trial court did not abuse its discretion in determining that defendant failed to establish entitlement to an evidentiary hearing.

Defendant further asserts that this Court should remand the case for an evidentiary hearing to develop the record for his appeal. This assertion is abandoned because it is cursory and unsupported. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "Issues insufficiently briefed are deemed abandoned on appeal." *People v Van Tubbergen*, 249 Mich App 354, 365; 642 NW2d 368 (2002). Defendant has not provided an affidavit or offer of proof regarding the facts to be established at an evidentiary hearing, as required when seeking remand for an evidentiary hearing. See MCR 7.211(C)(1)(a)(*ii*); *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007). We therefore deny defendant's request to remand the case to the trial court for an evidentiary hearing.

Defendant next argues that the trial court erred by admitting other-acts evidence at defendant's second trial. Defendant's argument fails.

The trial court's admission of other-acts evidence is reviewed for an abuse of discretion. *People v Kelly*, 317 Mich App 637, 643; 895 NW2d 230 (2016). An abuse of discretion exists when the trial court's decision falls outside the range of reasonable and principled outcomes. *Id*. Any preliminary question of law, such as whether a rule of evidence bars admission, is reviewed de novo. *Id*.

"As a general rule, evidence of other crimes, wrongs, or acts of an individual is inadmissible to prove a propensity to commit such acts." *Kelly*, 317 Mich App at 643 (quotation marks and citation omitted). But such evidence may be admitted for purposes other than propensity under MRE 404(b)(1). *Kelly*, 317 Mich App at 644. MRE 404(b)(1) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

---

[6] In his brief on appeal, defendant says that Trooper Kurish had been disciplined many times, including for lying. But defendant failed even to say that much in his motion for a new trial.

"A prosecutor seeking to introduce other-acts evidence under this rule 'bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity.' " *Kelly*, 317 Mich App at 644, quoting *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). In particular, a four-pronged standard applies in determining the admissibility of other-acts evidence under MRE 404(b)(1):

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*Kelly*, 317 Mich App at 644, quoting *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended on other grounds 445 Mich 1205 (1994).]

MRE 404(b)(1) "is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *Mardlin*, 487 Mich at 616.

The only other-acts evidence admitted at trial concerned an August 12, 2017 incident in which multiple police officers were involved in a chase of multiple ATV drivers on Detroit streets. The trial court did not abuse its discretion in admitting this evidence. The trial court reasonably noted that scout-car video of a chase of an ATV driver by defendant in which apparent laughter by defendant could be heard provided context for a subsequent statement of defendant by showing that defendant was involved in the chase of ATV drivers during that incident. Evidence of a statement that defendant later made during that incident was relevant for the proper purpose of showing defendant's motive, intent, plan, or system of using his Taser against persons who opposed him regardless of any threat posed by those persons. After Trooper Kurish and his partner that day, MSP Trooper Brennan Kelly, arrested an ATV driver, defendant said that he "was kind of hoping we could get close enough to that guy so we could tase him when he stopped." There was no indication that the ATV driver would have posed any danger after he stopped. Defendant's statement thus suggests that he had a motive, intent, plan, or system to use his Taser on a person who opposed police without respect to any threat posed by that person. Such evidence was relevant to show why defendant fired his Taser at Grimes and to rebut the defense theory that defendant deployed his Taser because he thought Grimes was armed and was reaching for a gun. That is, defendant's statement during the August 12, 2017 incident tends to make it more probable that, on August 26, 2017, defendant deployed his Taser because Grimes was opposing defendant by failing to stop and not because defendant thought Grimes was armed and reaching for a gun.

The probative value was not substantially outweighed by the danger of unfair prejudice. For the reasons explained, the evidence was highly probative to establish defendant's motive, intent, plan, or system of using his Taser on persons who opposed him. And there was no *unfair* prejudice that could have substantially outweighed that probative value. "All relevant evidence is prejudicial; only *unfairly* prejudicial evidence may be excluded." *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011). "Unfair prejudice may arise where considerations extraneous to the merits of the case, such as jury bias, sympathy, anger, or shock, are injected." *Id*. Defendant has not established that any such unfair prejudice arose, let alone that it substantially outweighed the probative value of the evidence. In addition, a proper limiting instruction was given.

Defendant finally argues that his five-year minimum sentence, which was above the advisory sentencing guidelines range, is disproportionate and unreasonable. Defendant's argument fails.

This Court reviews a trial court's sentence outside of the advisory guidelines range for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A trial court abuses its discretion when it imposes a sentence that is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 474 (quotation marks and citation omitted).

When reviewing whether a sentence outside of the advisory guidelines range is reasonable, this Court considers whether the trial court adequately explained "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citation omitted). The "relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Id*. (citations omitted). When sentencing a defendant, a trial court must consider the nature of the offense and the background of the offender. *Steanhouse*, 500 Mich at 474.

Defendant's advisory guidelines range for his minimum sentence was 19 to 38 months. In announcing its sentence, the trial court stated that it had reviewed and considered "a stack of letters" the court had received on behalf of defendant. The court noted that the minimum sentence is discretionary and must be proportionate to the circumstances of the offense and the offender. The court said there were circumstances in this case that were not adequately accounted for by the guidelines, any one of which "would justify going above the guidelines."

The court noted that Grimes was 15 years old, "a teenage boy whose reasoning skills were still developing." The court observed that, as has been explained in cases involving life sentences for juvenile offenders, "adolescents make rash decisions without thinking about the consequences of those actions." By contrast, "[d]efendant is a grown man who should have taken more care in choosing his actions that day."

The court said that another factor not adequately considered by the guidelines was defendant's specialized training as a police officer as well as his duty as a police officer to protect the public, including suspects. The court noted that defendant "not only has police training and certification, but he also has a law degree." Defendant "has extensive training in the use of [T]asers, and the dangers and safety precautions that must be considered before deploying a [T]aser." The court said that defendant had "been warned by his superiors to be more careful with his [T]aser use." Defendant's "actions that day were in direct contradiction with the training he received. He was taught to consider fall risks if a person is in a position to fall when the [T]aser is deployed." There was an "unquestionable" fall risk here given that Grimes was on a moving ATV that was approaching a parked vehicle when defendant deployed his Taser. Although defendant claimed to believe that Grimes was reaching for a weapon at his waist, "that theory was rejected by the jury, and the defendant made no mention of his belief that Grimes was reaching for the weapon on the video at the time he deployed the [T]aser or after when he approached Grimes

on the ground." If defendant "truly believed Grimes was armed, he would have searched him for a weapon and informed his partner of this immediately, which he did not do until after the ambulance had left the scene." Immediately after deploying the Taser, defendant stated over the police radio that he had deployed his Taser but said nothing about Grimes reaching for a weapon.

The trial court then concluded as follows:

> [Defendant], you abused the public trust placed in police officers by your actions that day. Your actions make it more difficult for the thousands of men and women who put on a uniform and a badge every day to go out and perform their duties.
>
> It is the few officers like you who have caused the distrust of police officers that plagues our community in Detroit, the state of Michigan, and throughout the country.
>
> For these reasons, I'm going to go above the guidelines. Therefore, it is the sentence of this Court that you be sentenced to a period of incarceration of 5 to 15 years in the Michigan Department of Corrections, which is a few months higher than the next higher grid on the sentencing guidelines, which would have been 29 months to 57 months.
>
> I believe the sentence is reasonable and proportionate to the circumstances of the offense and the offender.

The trial court adequately explained its reasons for concluding that a five-year minimum sentence was proportionate to the circumstances of the offense and the offender. The trial court acknowledged positive aspects of defendant's background by noting a "stack of letters" it had received in support of defendant. The court nonetheless described ways in which the guidelines did not account for the circumstances of the offense and the offender. The trial court correctly noted Grimes's young age and contrasted it with defendant's status as an adult responsible for making decisions. The court further noted that defendant was a police officer entrusted to protect the public. Defendant had specialized training in the use of Tasers, including in regard to the risks of a person falling when a Taser is deployed. Despite that training, defendant fired his Taser at Grimes while Grimes was riding without a helmet on a fast-moving ATV that was approaching a parked vehicle. As the trial court noted, the jury rejected defendant's theory that he believed Grimes was armed and reaching for a weapon when defendant deployed the Taser. After describing these circumstances that the court viewed as warranting a sentence above the advisory guidelines range, the court used the guidelines in determining an appropriate sentence, noting that its five-year minimum sentence was a few months higher than the next higher grid on the guidelines range. Overall, the court provided an adequate basis for its conclusion that the five-year minimum sentence was proportionate to the circumstances of the offense and the offender.

Defendant suggests that he did not know that Grimes was only 15 years old; defendant notes that Grimes had a large height and weight. But the court did not focus on defendant's knowledge of Grimes's youth; the court's key point was that, in contrast to an adolescent such as Grimes, defendant was an adult responsible for making decisions, and more than that, he was a

police officer entrusted to protect the public and had received specialized training regarding Tasers. Defendant says that it was improper to note that he has a law degree. This was not a central part of the trial court's decision; the court's main focus was on defendant's responsibility and specialized training as a police officer, not on his law degree.[7] Defendant attempts to relitigate the question whether he believed Grimes was armed, but the trial court correctly noted that the jury rejected this defense theory and that the theory was largely contradicted by defendant's own behavior. Accordingly, defendant's arguments challenging the reasonableness of his sentence fail.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Michael F. Gadola
/s/ Anica Letica

---

[7] Defendant contends that, by mentioning defendant's law degree, the court was improperly basing its departure from the guidelines on defendant's legal occupation, in violation of MCL 769.34(3)(a), which states, "The court shall not use an individual's gender, race, ethnicity, alienage, national origin, *legal occupation*, lack of employment, representation by appointed legal counsel, representation by retained legal counsel, appearance in propria persona, or religion to depart from the appropriate sentence range." (Emphasis added.) But defendant's law degree was not his "legal occupation." Rather, it was additional training or education that defendant received. Defendant has not established that the trial court was prohibited from referring to the law degree.